[352]    *R. H. McDONALD, Appellant, *v.* G. GRIS-
WOLD, Respondent.

[1] Revenue Act—County Tax.—The Revenue Act of 1853 provides that the Boards
of Supervisors, or Courts of Sessions, shall levy, in addition to the State Tax, a
tax not to exceed fifty cents on each one hundred dollars, for *county purposes,*
and such other special taxes as may be by law authorized to be collected.

Idem—Construction of.—Under this provision, the Court of Sessions of Sacra-
mento levied a tax of fifty cents for county purposes, twenty-five cents for fun-
ded debt tax, etc. *Held,* that the words of the Revenue Act, authorizing a tax
of fifty cents on each one hundred dollars for "county purposes," ought to be
restricted to the current expenses of the year, as an *appropriation,* leaving the
scrip-holders of the county to look for payment to the tax collected for the float-
ing debt.

Appeal from the Sixth Judicial District.

*Aldrich,* for Appellant.

*Edwards & English,* for Respondent.

Mr. Ch. J. Murray delivered the opinion of the Court.
Mr. J. Heydenfeldt and Mr. J. Wells concurred.

This was an application to the Court below for a *mandamus*
to compel the defendant, in his capacity of County Treasurer
of Sacramento County, to pay certain warrants drawn on the
treasury of said county.

The defendant admits that he has moneys in his hands
sufficient to pay said warrants, but contends that they should
be applied to the payment of the debts of the fiscal year of
1853 and 1854, and not to the payment of debts previously
contracted.

The question, whether the funds in the hands of the
County Treasurer are liable for the payment of all outstand-

[1] Distinguished in *Taylor* v. *Brooks,* 5 Cal. 334; construed in *McCauley* v. *Brooks,*
16 Cal. 34.

ing indebtedness of the county, or only for those contracted during a particular period, must depend on an examination of the legis- *lation upon this subject, and [353] the probable result proposed to be attained.

Up to the year 1853, the revenue of Sacramento County was inadequate to meet its expenses, so that it became necessary to apply to the Legislature for relief against the accruing indebtedness.

In that year an Act was passed authorizing the county to fund its floating debt, and to levy a special tax for the gradual extinguishment thereof.

The first section of the Revenue Act of 1853 fixes the tax to be levied for State purposes, at sixty cents on each hundred dollars, and provides that the Board of Supervisors, or Court of Sessions, shall levy, in addition to the State tax, a tax not to exceed fifty cents on each one hundred dollars, for *county purposes,* and such other special taxes as may be by law authorized to be collected.

Under this provision, the Court of Sessions of Sacramento levied a tax of fifty cents for county purposes, twenty-five cents for jail tax, twenty-five cents for funded debt tax, etc.

The only question is, whether the words of the Revenue Act of 1853, authorizing a tax of fifty cents on each one hundred dollars for " county purposes," ought to be restricted to the current expenses of the year, as an *appropriation,* leaving the scrip-holders of the county to look for payment to the tax collected for the floating debt.

It will be borne in mind that the Constitution of this State empowers the Legislature to fix the mode of levying, collecting and distributing taxes, so that, the power being complete, we are only to look to the intention.

At the time of the passage of the Funding Act, the county was largely in debt, and it is evident the Legislature intended to reduce its financial affairs to a cash basis, by providing for immediate expenses, and the gradual extinguishment of the old indebtedness. If such was not the intention, it would be difficult to discover the object of the law.

. If, on the other hand, this was the object of the Legislature, it follows that such intention would be wholly defeated, if scrip-holders had the right to receeive [354] payment out of the fund col-*lected for county purposes, it being fifty cents, while the funded debt is but twenty-five cents. No one would fund his scrip, at least until the larger fund was exhausted, so that the Act, which was designed to produce so favorable an effect, would be of but little practical benefit.

We cannot but suppose that the Legislature had in view these practical results in passing the Act of 1853, and that the words of the first section were designed as a special appropriation.

We do not believe that the Legislature could compel the holders of county scrip to fund the same, unless by their consent; but under the constitutional power, it may make such appropriation of the county revenues as, in its discretion, may seem proper.

For these reasons, the judgment of the Court below is affirmed, with costs.