## E. C. TAYLOR, Appellant, v. WM. N. BROOKS, County Treasurer of Yolo County, Respondent.

Under the statute respecting County Treasurers. passed March 22d, 1850, the party who registers his warrants becomes a preferred creditor, and is to be paid as soon as there are sufficient funds in the treasury, and the prior registered warrants are paid.

APPEAL from the District Court of the Eleventh Judicial District, Yolo County.

The opinion of the Court contains the facts.

*Ralston & Wallace*, for Appellant.

*Cartter & Hartley*, for Respondent.

No briefs on file.

MURRAY, C. J., delivered the opinion of the Court. HEYDENFELDT, J., concurred.

The ninth section of the Act to fund the debt of the County of Yolo, after having provided for funding the indebtedness existing prior to the 1st of January, 1853, and for paying the interest on the same by a special tax levied for that purpose, provides that it shall be the duty of the Treasurer to set aside a Sinking Fund, into which shall be paid " First—any and all surplus of the interest fund aforesaid; Second —whatever surplus may remain in the treasury of the County of Yolo, on the first day of March, 1854, and on the first day of March every year thereafter, after paying the ordinary yearly expenses of the county, until said Sinking Fund shall be sufficient to pay the principal and interest of the debt so funded."

The plaintiff in this suit is the owner and holder of "two warrants," drawn on the 11th of January, 1854, not fundable under the Act, and which were regularly presented, and registered " *Not paid for want of funds,*" according to the provisions of the Act concerning County Treasurers, passed March 22d, 1850.

It is admitted that the warrants in dispute are the oldest outstanding registered warrants on the county, and that there are sufficient funds in the hands of the Treasurer arising from the revenue of 1854, to pay the same. But it is contended that the ninth section of the Act quoted fixes a "fiscal year," for said county, to commence on the 1st day of March, 1854, and that said funds in the hands of the Treasurer should be applied to the liquidation of warrants issued after that time.

Such is not a true construction of the statute. The intention of the Legislature was to provide for the gradual extinguishment of the county indebtedness by means of taxation, and the surplus revenue, if any, remaining in the treasury at the end of each year. This it was supposed would be amply sufficient, leaving the county to provide for its future expenses by means of the general tax which the law authorized.

From the registration of the plaintiff's warrants, he became a preferred creditor by the provisions of the Act of March 22d, 1850, and it would certainly be a forced construction, and one to which we would be very reluctant to assent, without direct words to that effect, to hold that the Legislature had not only deprived him of the privilege of funding his warrants, but also denied him all remedy; and that, too, when there was a law upon the statute books providing that said indebtedness should be paid out of the first moneys in the treasury belonging to the general fund. Such a construction would postpone indefinitely, if it did not render the debt worthless, which was contracted on the last day of the fiscal year, while that incurred on the day succeeding, would take preceeence of all prior recorded warrants.

I can see no good reason why the revenue of 1854 should not be applied to a debt of the same year, or why a creditor holding the warrants of the county, and who is not paid up to the 1st of March, because there is no money in the treasury, should not be allowed his debt out of the revenues of that year, when they shall afterwards be paid in, or out of any other moneys not specially set apart by law. It is said this would be a legal fraud on the bond-holders. Such is not the case; they are to be considered as having looked to the interest tax, and the

gradual accumulation of the Sinking Fund, for their security,—and I apprehend that their action in funding their debts against the county, was not predicated upon the hypothesis that a still greater fraud was to be committed upon other creditors of the county, by refusing them any remedy, or payment whatever.

The case of McDonald *v.* Griswold, 4 Cal., 352, does not touch this case, and cannot properly be said to support the decision of the Court below.

For these reasons the judgment is reversed, and the Court below directed to proceed in conformity to this opinion.