[No. 775.]

ODD FELLOWS SAVINGS AND COMMERCIAL BANK, RESPONDENT, *v.* MILES QUILLEN, COUNTY TREASURER OF LINCOLN COUNTY, APPELLANT.

STATUTE, WHEN DIRECTORY.—A statute prescribed merely as a matter of form, containing directions which are not of the essence of the thing to be done, but which are given solely with a view to the orderly and prompt conduct of the business, is merely directory.

ACT APPROVED FEBRUARY 17, 1873 (STATS. 1873, 54), CONSTITUTIONAL.—The constitutionality of the act funding the indebtedness of Lincoln county sustained upon the authority of *Youngs* v. *Hall* (9 Nev. 212).

CONSTRUCTION OF STATUTES.—It is the duty of courts, in construing a statute, to ascertain what the legislature had in view in adopting it, in order to secure, if possible, the object intended to be secured by the statute.

ACT FUNDING THE INDEBTEDNESS OF LINCOLN COUNTY CONSTRUED.—In construing the act of 1873 (Stats. 1873, 54): *Held,* that the legislature intended to, and did, make provision for the payment of the interest on the bonds, regardless of the question whether the financial transactions of the county could be kept on a cash basis or not.

CONSTRUCTION OF STATUTES.—When the various sections of the statute are clear, plain, and unambiguous, the legislature must be understood to mean just what it has explicitly expressed. In such a case there is no room for construction.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

The facts are stated in the opinion.

*George Goldthwaite, District Attorney of Lincoln County, and J. R. Kittrell, Attorney-General,* for Appellant.

I. The act of the legislature entitled, "An Act to consol-

idate and fund the debt of Lincoln county," is unconstitutional. It is obnoxious to section twenty, article IV, of the constitution of the state of Nevada, which prohibits the passing of local or special laws regulating county and township business. (Dissenting opinion of Chief Justice HAWLEY, in *Youngs* v. *Hall*, 9 Nev. 225.)

II. The clause of the act requiring the treasurer to detach coupons from the bonds was inserted *ex industria*, and is not directory. (2 Comp. L., sec. 4181; *Corbett* v. *Bradley*, 7 Nev. 106; *Langenour* v. *French*, 34 Cal. 99; *Leake* v. *Blasdell*, 6 Nev. 41; *V. & T. R. R. Co.* v. *Elliot*, 5 Id. 364; *Cheever* v. *Hayes*, 3 Cal. 471.)

III. The financial transactions of Lincoln county being by said act placed upon a cash basis, the intention of the legislature was to keep such transactions on a cash basis if possible, and not to strip the county of the means provided to meet its current expenses; and the general fund of said county was not to be subjected to the payment of said coupons as long as there were any legal outstanding claims against said general fund. (2 Comp. L., secs. 4184, 4193–94–97; *McDonald* v. *Griswold*, 4 Cal. 352.)

Section 9 of the act under consideration says: "In the event the interest fund is insufficient, the treasurer shall draw on the general fund of said county for such purpose."

IV. The legislature only intended that the surplus money over and above the legal outstanding claims against said general fund should be subject to the treasury draft. The auditor of said county must draw his warrant when there is any money in the county treasury to satisfy any allowed, audited and outstanding claims against the general fund. The moneys in said fund are subject to the auditor's warrant, and not to the draft of the treasurer, and only when there are no outstanding legal claims against said general fund, or a surplus over and above the legal outstanding claims against said fund is there any money subject to the treasurer's draft. (2 Comp. L., secs. 3078–9; 1 Nev. 462–3.)

V. By an act of the legislature of the state of Nevada (Stats. 1875, 74), the county commissioners of the several

counties of the state are authorized and empowered to levy and cause to be collected an *ad valorem* tax for county purposes, not exceeding the sum of one hundred and fifty cents on each one hundred dollars value of all taxable property in the county, etc. " County purposes" means such moneys as are apportioned by the county commissioners and which are not set aside by law into special funds, and comprise the general county, indigent sick, and contingent funds of the county. (Comp. L., sec. 3100.)

It follows, then, that the payment of interest on bonds is not a county purpose, and the using of money in the general fund to pay such interest is not using the money in said fund for county purposes.

VI. The collection of revenues for county purposes is an appropriation for county purposes, and, being such, cannot be used to pay interest coupons as long as there are legal outstanding claims against the general fund. (*McDonald* v. *Griswold,* 4 Cal. 352; *La Forge* v. *McGee,* 6 Id. 285, 650.)

VII. If the courts regard section nine of the act under consideration as ambiguous and capable of two constructions, then the construction most beneficial to the public should be adopted. (*Hayden* v. *Supervisors of Ormsby Co.,* 2 Nev. 371.)

*Bishop & Sabin,* for Respondent.

I. When an act is conceived in clear and precise terms, when the sense is manifest and leads to nothing absurd, there can be no reason to refuse the sense which it naturally presents. (*Jackson* v. *Lewis,* 17 Johns. 475; 13 Johns. 504; *Waterford et al.* v. *People,* 9 Barb. 161; *People* v. *N. Y. C. R. R. Co.,* 13 N. Y. (3 Kern.) 78; 25 Barb. 199; Cooley on Const. Lim. 72, 73, 185, 186.)

II. The consideration of the justice or policy of a statute, and its effects upon the general welfare of the state, is addressed to the discretion of the legislature, and having been decided by the legislature, is not a subject of judicial inquiry. (*Billings* v. *Hall,* 7 Cal. 1; *Youngs* v. *Hall,* 9 Nev. 212; *State ex rel. Hess* v. *Washoe Co. Com.,* 6 Nev. 104; *Napa Valley R. R. Co.* v. *Napa Co.,* 30 Cal. 435; *People* v. *Saratoga*

*and Rens. R. R. Co.*, 15 Wend. 133; *People* v. *Morrell*, 21 Wend. 576; Cooley on Const. Lim. 168–172.)

III. The legislature is the judge whether a general or special law is applicable in a certain case. (*State* v. *Co. Court of Boone Co.*, 11 Am. Rep. 415; *Evans* v. *Job*, 8 Nev. 323; *Hess* v. *Pegg*, 7 Nev. 28; *Clarke* v. *Irwin*, 5 Nev. 111; *McCauley* v. *Brooks*, 16 Cal. 11.)

IV. Courts will only declare an act unconstitutional when it violates the constitution clearly, palpably, plainly and in such a manner as to leave no reasonable doubt. (*Stewart* v. *Supervisors Pope Co.*, 1 Am. Rep. 238; Cooley on Const. Lim. 163, sec. 3; 168–171, 181 *et seq.*, and cases there cited.)

V. The coupons sued upon in the action are, by their terms, negotiable, and transferable by delivery. (1 Comp. Laws, secs. 1–3 *et seq.*; 2 Redfield on Railways, sec. 239 *et seq.*, and case cited; *Craig* v. *City of Vicksburg*, 31 Miss. 216; *White* v. *V. & M. R. R. Co.*, 21 How. 575; *Delafield* v. *State of Ill.*, 21 Hill, 176; *Bank of Rome* v. *Village of Rome*, 19 N. Y. 20; *Brainard* v. *N. Y. & H. R. R. Co.*, 25 N. Y. 496.)

VI. The provision of the statute requiring the treasurer to detach the coupons, is merely directory. (Cooley on Const. Lim. 74–78; *Corbett* v. *Bradley*, 7 Nev. 108; *Rex* v. *Locksdale*, 1 Burr, 447; *Marchant* v. *Longworthy*, 6 Hill, 646; affirmed in 3 Denio, 526; *Striker* v. *Keely*, 7 Hill, 9–24; *People* v. *Supervisors of Ulster*, 34 N. Y. 268; *Hardman* v. *Bowen*, 39 N. Y. 196; *Sears* v. *Burnham*, 17 N. Y. 448; *People* v. *Peck*, 11 Wend. 612; *Jackson* v. *Young*, 5 Cow. 269.)

*Robert M. Clarke*, for Respondent, orally argued this cause.

By the Court, HAWLEY, C. J.:

On the fifth day of January, A. D. 1876, respondent presented to appellant certain interest coupons issued under the act entitled, "An act to consolidate and pay the indebtedness of Lincoln county" (Stat. 1873, 54), and demanded payment of the amount due thereon. Appellant refused to pay the same, whereupon the respondent applied for and obtained from the district court of said county a peremptory writ of mandamus directing appellant to transfer the money

then in the general fund, to the interest fund of said county, to be applied to the payment of said coupons as provided by section nine of said act.

This appeal is taken from that order.

It appears that the money in the interest fund is insufficient to pay the coupons; that if the money in the general fund is transferred to the interest fund it will pay the amount due on said coupons; that at the date aforesaid the legal, allowed, audited and outstanding claims against the general fund of said county were largely in excess of the amount of money then in the general fund; that prior to the presentation of said coupons they were detached and separated from the bonds with which they were originally issued.

1. It is claimed by appellant that no legal demand was made for the payment of said coupons.

This position is sought to be maintained upon the ground that the coupons were detached from the bonds before being presented to the treasurer for payment. Section five of the act provides as follows: "When any interest shall be paid upon a bond issued under the provisions of this act, the county treasurer shall detach the coupons for the interest then due and paid, and deliver the same to the county auditor taking his receipt therefor, whose duty it shall be to file the same in his office." It is claimed by appellant that this section is mandatory; that it was inserted to prevent fictitious coupons from being presented to the treasurer, and that it prohibits him from paying any coupons not detached by himself. It is not pretended that the coupons presented were fictitious; but on the other hand it is admitted that they are genuine, and that if they had been paid the treasurer could have delivered them to the county auditor as directed in said act. True it is that there was no excuse for the holder of the bonds to detach, or cause to be detached, the coupons before presenting the same to the treasurer, and this was certainly not the safest course to pursue. It is always best to follow the plain provisions of the statute and thereby avoid any question of construction. But the respondent, having disregarded the provision, insists that the

statute is merely directory, and that inasmuch as no one has been prejudiced it ought not to lose its claim because it did not present the bonds with the coupons attached. We are of opinion that courts have often gone too far in declaring positive provisions of the statute merely directory. This summary mode of dispensing with statutory provisions is often liable to abuse. It is the exercise of a power which trenches so closely upon legislative discretion that it ought never to be resorted to by the courts "except," as was said by Lewis, C. J., in *Corbett* v. *Bradley*, "when it is clearly manifest that the legislature did not deem a compliance with it material, or unless it appears to have been prescribed simply as matter of form." (7 Nev. 108.)

Judge Cooley in his work on Constitutional Limitations, in discussing this question, says: "Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or *in the precise mode indicated*, it may still be sufficient if that which is done accomplishes the substantial purpose of the statute." (Cooley, Const. Lim. 77, 78, and authorities there cited.)

In determining this question, as well as every other that involves a construction of the statute, we must carry into effect the intention the legislature had in view in adopting it, in order to secure, if possible, the object intended to be secured by the statute. It will be observed that no negative words are used which forbid the detaching of the coupons from the bonds by any other person than the treasurer. We think it is clear that the legislature, in adopting the provision, inserted the clause requiring the treasurer to detach the coupons as a mere matter of form. The real object to be accomplished was the surrender of the coupons and the delivery of the same to the auditor, to be by him filed as provided in said act, and it was immaterial by whose hands they were detached. The act of detaching the coupons from the bonds was not of the substance of the law. Upon this

ground, sanctioned as it is by eminent authors, and approved by numerous judicial decisions, this provision of the act must be considered and treated as directory.

2. It is contended by appellant that the act is obnoxious to sections twenty and twenty-one of article IV of the constitution of this state.

Whatever views we might entertain upon this question if it was *res integra*, need not be here expressed. We think the constitutionality of the act must be sustained upon the authority of *Youngs* v. *Hall*, 9 Nev. 212.

As the bonds of Lincoln county, from which the coupons were detached, are negotiable, and rights of property therein may have been acquired by the transfer thereof, since the decision in that case was rendered; and as the legislature of 1875, relying upon the correctness of that decision, passed certain acts that would be subject to the same objection, even if we entertained the opinion that *Youngs* v. *Hall* was erroneous, the consequences of a reversal would unquestionably prove of greater evil than to allow it to remain. In such a case we conceive it to be our duty to adhere to former decisions. The question whether the act impairs the obligation of contracts is not presented by this appeal. That could only be raised by a party holding outstanding warrants against the county which were issued prior to the passage of the act and have not been funded under the provisions of said act.

3. Appellant argues that it was the intention of the legislature to keep the financial transactions of the county on a cash basis if possible, and not to strip the county of the means provided to meet its current expenses; that the holders of the legal outstanding claims against the county had a vested right to all the money in the general fund sufficient to pay their claims, and that the only money subject to the treasurer's draft for the payment of interest is the surplus over and above the legal outstanding claims against said general fund.

The conclusion we have reached after a thorough examination of this case, renders it unnecessary to notice in detail the several points presented by appellant's counsel in sup-

port of this position. That the object of the legislature in funding the indebtedness of Lincoln county was to place all of its financial transactions upon a cash basis there can be no doubt, for such is the express language of section one of said act. In order to accomplish this purpose, it was, however, evident that some provision would have to be made whereby the then existing and outstanding indebtedness against the county could be secured. As an incentive to induce scrip-holders to fund this indebtedness, it being within the power of the legislature to make such appropriation of the revenues of the county as it deemed proper, the act was passed. It had a double purpose, that of securing the indebtedness and of reducing the financial transactions of the county thereafter to a cash basis. In arriving at the construction to be given to this act, we do not consider the case of *McDonald* v. *Griswold* (4 Cal. 352), as applicable to this case. There the legislature, in funding the indebtedness of Sacramento county, authorized the levy of a special tax for the gradual extinguishment of said indebtedness, and also authorized the levy of a tax for county purposes. A creditor of the county holding certain warrants that were issued prior to the act, sought to compel the county treasurer to pay his warrants out of the taxes collected for county purposes. The court held that this could not be done; that the tax collected for county purposes "ought to be restricted to the current expenses of the year as an appropriation, leaving the scrip-holders of the county to look for payment to the tax collected for the floating debt." The act under consideration provides that in addition to the ordinary taxes for county purposes, there shall be levied and collected "a special tax, to be called the interest tax," and that the fund derived from this tax shall be applied to the payment of the interest accruing upon said bonds (sec. 8), and then expressly gives further security in plain and unmistakable language as follows: "It shall be the duty of the county treasurer of Lincoln county to make such arrangements for the payment of the interest of said bonds when the same falls due, at least thirty days before the time of payment; and in the event said interest fund is

insufficient, the treasurer shall draw on the general fund of the county for such purpose" (sec. 9).

It may be that the legislature thought that the ordinary taxes for county purposes would be sufficient to keep the financial transactions of the county on a cash basis, and that the interest fund would be sufficient to pay the coupons as they became due. But the legislature made provision for any contingency that might arise by the insufficiency of the interest fund, and authorized the treasurer in the event of such contingency to draw his draft upon the general fund for the payment of the interest; and further provided that if there was not sufficient money in the general fund, then the treasurer was "authorized and required to make such contracts and arrangements as may be necessary for the payment of said interest and for the protection of the credit of the county of Lincoln" (sec. 9), and did not make any provision for keeping the financial transactions of the county on a cash basis if the ordinary taxes for county purposes should prove insufficient, but did provide for incurring an indebtedness by the commissioners not exceeding nine thousand dollars (sec. 17). That the financial transactions of the county have not been kept on a cash basis is probably owing to the fact that the revenues of the county have decreased since the passage of the act, or the legislature may have been mistaken as to the amount necessarily required to keep the machinery of the county government in motion, and therefore committed an error of judgment in limiting the amount of taxes to be levied for the purpose of paying the interest on the bonds and in limiting the amount of indebtedness to be incurred by the commissioners. But it is manifest that the legislature intended to make, and did make, provision for the payment of the interest on the bonds regardless of the question whether the financial transactions of the county could be kept on a cash basis or not. We are told that this construction of the act has produced the effect "of closing hospitals, unbarring prisons and paralyzing justice." This condition of affairs is certainly to be deplored. If there was any ambiguity in the language of the act, or if it was susceptible of two constructions, then

a construction which would produce such disastrous results, or be of practical inconvenience to the community, would be rejected, and the construction that would prove most beneficial to the public would be adopted. But the legislative body is the supreme law-making power of the state, and as long as it acts within the pale of its constitutional authority, this court is bound by its action; and where the language of the law given is so plain as not to admit of a different construction, we have no other duty to perform than to execute the legislative will. This must be done without any regard to our own views as to the wisdom, justice, policy or effect of the law.

When all its various sections are taken and compared together, we think the language of the act is clear, plain, simple, unambiguous, and susceptible of but one construction. In such a case, the legislature must be understood to mean just what it has plainly and explicitly expressed, and there is nothing left for this court to construe. This general principle has been frequently decided by this court. (*Brown* v. *Davis*, 1 Nev. 413; *Lewis* v. *Doran*, 5 Nev. 411; *Virginia and Truckee R. R. Co.* v. *Commissioners of Lyon County*, 6 Nev. 73; *Hess* v. *Commissioners of Washoe County*, 6 Nev. 107; *Fitch* v. *Elko County*, 8 Nev. 274.)

In *Newell* v. *The People*, in the court of appeals of New York, Johnson, J., said: "Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpretation, the thing we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them. If thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning, apparent upon the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case, there is no room for construction. That which the words declare is the meaning of the instrument;

Points decided.

and neither the courts nor legislatures have the right to add or to take away from that meaning." (7 N. Y. 97.)

In *McCluskey* v. *Cromwell*, Allen, J., said: "It is beyond question the duty of courts, in construing statutes, to give effect to the intent of the law-making power, and seek for that intent in every legitimate way. But in the construction, both of statutes and contracts, the intent of the framers and parties is to be sought, first of all, in the words and language employed; and if the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation." (11 N. Y. 601.)

These rules, by which courts have ever been guided in seeking for the intention of the legislature, in the language of Chancellor Kent, "are maxims of sound interpretation, which have been accumulated by the experience and ratified by the approbation of ages." If the construction given to this act has produced, or will produce, the hardships referred to, we are powerless to rectify the evil. Relief must be sought by legislative enactments, not by judicial decisions.

The order appealed from is affirmed.