## McCALL v. HARRIS.

There is nothing in the Act of 1855, creating boards of supervisors in the counties of this State, which entitles a warrant, drawn on the fund for current expenses during that year, to a priority in payment over a warrant of the same class drawn the year before. As it does not seem to have been the intention of the Act to cut off all previous indebtedness, an honest creditor will not be postponed or denied the benefit of the Act under which he contracted, and which provided that warrants should be paid in the order of registry.

APPEAL from the District Court of the Tenth Judicial District, County of Sutter.

This was an application for a mandamus to the county treasurer to pay the plaintiff a warrant on the treasurer, dated October 1, 1855, for salary of the plaintiff as county judge for the month of September, 1855.

The application was made on an agreed statement in the Court below. It was admitted that the defendant, as treasurer, had sufficient funds on hand to pay the warrant, and that he refused payment on the ground that there were outstanding warrants against the county, due and payable prior to the commencement of the then fiscal year, which had precedence in payment over plaintiff's warrant, or any other warrants issued during the said fiscal year. The Court below denied the writ, and plaintiff appealed.

*L. Sanders, Jr.,* for Appellant.

Cited Comp. Laws, p. 588, §§ 377–8–9, p. 551, § 179; Constitution, Art. VI, § 15; Laws of 1855, p. 53, §§ 14, 16.

No brief on file for Respondent.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice TERRY concurred.

The fourteenth section of the Act creating a board of supervisors in the counties of this State, passed March 20, 1855, provides that " warrants drawn on the fund for current expenses during the year, must distinctly specify the liability for which they are drawn, and when it accrued, and shall be paid in the order of their presentation to the county treasurer, and if there be not sufficient money in the fund for current expenses to pay all such warrants, then the balance shall be paid in the same manner as the present outstanding warrants."

Under the provisions of this section, it is claimed that a warrant drawn for the salary of the county judge for the month of September, 1855, must be paid out of the treasury, from the revenues of 1855, in preference to warrants drawn for the year 1854. The argument is that the Legislature intended to create a fiscal year, and establish a cash basis, by requiring the debts of each year to be paid first for that year, leaving the outstanding indebtedness to be paid out of the surplus, if any, and by prohibiting the supervisors from auditing any excess of expenditure above the revenue accruing in each year. (See section 16 of the same Act.) That the Legislature might have made this disposition of the revenues of the several counties, is beyond denial, but to attribute to them any settled line of policy on this subject, we will be compelled to go beyond the Act itself.

In many of the counties of the State, the old indebtedness is provided for by funding laws and interest tax. In the county of Sutter there is no provision whatever. What, then, is the meaning of the latter subdivision of the fourteenth section, that " if there be not sufficient money in the fund for current expenses to pay all such warrants, then the same shall be paid as the present outstanding warrants." It

will be observed that the Act does not set apart any particular amount, or all of the revenue of the year, *as a fund for the current expenses of the year*, but only provides that these warrants shall be paid out of *the fund for current expenses*. Neither is the board authorized to set apart such fund. As before remarked, if the Legislature had thought proper, the whole revenue might have been thus applied, but in the absence of any specific direction to that effect, the law regulating the office of county treasurers must govern; which provides, that warrants drawn upon the county treasury, shall be paid in the order of registry.

It could hardly be contended with fairness, that the fourteenth and sixteenth sections of the Act were intended to cut off all previous existing indebtedness, and as intimated by us in the case of Brooks *v.* Taylor, July term, 1855, we will not in the absence of clear and explicit legislation to that effect, postpone an honest creditor, or deny him the benefit of an Act under which he has contracted, and to which he looks as a guaranty for payment.

Judgment affirmed.