[No. 1725.   Decided April 13, 1895.]

J. R. MASON et al., Appellants, v. E. W. PURDY, County
          Treasurer, Respondent.

TAXATION — COUNTY EXPENSES — CONSTRUCTION OF ACT.

Art. 7, § 8, of the constitution, providing that, whenever the ex-
penses of any fiscal year shall exceed the income, the legislature may
provide for the levying of a tax for the payment of the deficiency, has
application to matters of state revenue and expenses, and not to
those of counties.

There is no limitation, under the constitution, upon the legisla-
ture's making provision for the levy of taxes by the board of county
commissioners for the payment of obligations theretofore incurred
by the county, as well as those to be incurred during the ensuing
fiscal year.

In view of the constitutional provision that counties are authorized
to incur and carry indebtedness, and in view of their universal cus-
tom, recognized by every department of the government, of carrying
such indebtedness in the shape of warrants and providing for their
payment in the order of issuance, § 63 of the revenue act of 1893, de-
claring that county taxes shall be based upon the estimated county
expenses for the ensuing year, cannot be construed as restricting the
funds arising from the annual tax levy in any given year to the pay-
ment of such obligations only as may be incurred during the fiscal
year following such levy.

*Appeal from Superior Court, Whatcom County.*

*Dorr, Hadley & Hadley,* for appellants.

*Newman & Howard,* and *Black & Leaming,* for re-
spondent.

The opinion of the court was delivered by

HOYT, C. J.—It is conceded by the appellants that
the judgment rendered by the superior court in this
cause must be affirmed if the funds arising from the
annual tax levy made by the board of county com-
missioners in any given year can be applied to the

payment of obligations other than those incurred during the fiscal year following such levy; but they contend that they cannot be so applied.

The provisions of the constitution upon which they rely to establish this contention are contained in §§ 5 and 8 of art. 7; and the provisions of the statute which they claim to have been enacted in harmony with such constitutional provisions are contained in § 63 of the revenue law of 1893 (Laws, p. 351). The following is a copy of said sections of the constitution:

"SEC. 5. No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

"SEC. 8. Whenever the expenses of any fiscal year shall exceed the income, the legislature may provide for levying a tax for the ensuing fiscal year, sufficient with other sources of income, to pay the deficiency, as well as the estimated expenses of the ensuing fiscal year."

And the part of said § 63 of the revenue act of 1893, relied upon, is substantially as follows: "The county taxes shall be levied by the county commissioners at the time of their meeting in October of each year. Such taxes shall be based upon an itemized statement of the estimated county expenses for the ensuing year, which statement shall be included in the published proceedings of the said board, and no greater levy of county tax shall be made upon the taxable property of any county than will be equal to the amount of such estimated expenses, with an excess of fifteen per cent. of the same;" and it is contended that thereby the legislature has provided the object for which county taxes shall be levied as required by § 5 of art. 7 of the constitution, and that such object is the payment of the expenses for the ensuing fiscal year, and

that the application of any funds derived from such levy to any other purpose than the payment of such expenses would be in violation of said section of the constitution. And § 8 of art. 7 is relied upon to aid this contention, it being claimed that thereunder the legislature is given authority to provide by special levy for other obligations of the several counties.

If the section of the constitution last mentioned referred to taxation for county purposes, as claimed by appellants, it would greatly strengthen their contention as to the force to be given to the other section and to the provisions of the statute above set out. But to us it seems clear that this section has no reference whatever to taxation for county purposes. This is so evident from the language used that the inference to be drawn therefrom can be little aided by argument. By other provisions of the constitution the legislature is prohibited from enacting special laws; hence, if it enacts upon the subject of county taxation, it must do so by a statute applying to a class of counties; and as the revenue of only a single county may have been insufficient to meet its expenses, the fact of a deficiency in a single county would require of the legislature the passage of a law which would authorize the levy of a tax in all of the counties of the state. Such legislation would be so absurd that it could not have been contemplated by the framers of the constitution. Beside, there is no way provided by which the legislature could be informed as to the condition of the finances of the several counties. From these facts and from the fact that the language is apt and accurate when applied to state expenses, revenue and taxation, and entirely inapt and inaccurate when applied to those of counties, it must be held that it applies only to those of the state. It follows that that portion of the argu-

ment of the appellants founded upon the language of this section is without force.

For the same reason it might well be contended that that portion of the argument founded upon said § 5, was also without force. Its language is applicable and accurate when applied to taxation by the state, and, at least to a degree, inaccurate and inapplicable when applied to taxation by counties. The law by which counties are authorized to levy a tax is not, strictly speaking, a law imposing a tax, and the authority of the legislature to enact such a law is much better sustained by that part of § 9 of said art. 7, which provides that "for all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same," than it is by the language of said § 5. But it is not necessary to decide as to the application of this section, for the reason that, in our opinion, the object for which the tax shall be levied as therein provided is not the expenses of the county or state for any particular time, but has reference to the purpose for which the money is to be raised as it relates to the business of the county or state. If it applies to counties, it was thereby made the duty of the legislature in providing for a levy for their purposes to specify the general objects for which the levy might be made. For instance, that a certain amount might be levied for general county purposes, a certain amount for school purposes, and a certain amount for roads and bridges. This is the more reasonable construction, and is the one which has been adopted by the legislature, as it has specially provided in all the acts relating to the levy of taxes by counties that there

shall be separate amounts levied for each of the objects above stated.

For these and other reasons it is our opinion that the contention of the appellants that the object of the tax levied by the board of county commissioners, within the meaning of this constitutional provision, was the payment of all the county expenses for the ensuing fiscal year, and not the payment of the different classes of county expenses as therein provided for and segregated, cannot be sustained. It follows from what we have said, that, under the constitution, the legislature was at liberty to provide for the levy of taxes by the board of county commissioners for the payment of obligations already incurred by the county as well as those thereafter to be incurred.

The only remaining question is to decide whether or not it has done so. This question can only be properly decided by taking into consideration the circumstances so existing in the several counties of the state as to be presumed to have been within the knowledge of the legislature at the time it enacted the law in question. The important circumstances which so existed were that in nearly or quite every county of the state its indebtedness was carried in the shape of warrants issued by order of its board of county commissioners upon its treasurer; that such indebtedness had been so carried from a time ante-dating the adoption of our constitution; that in all these counties it had been the universal custom of the county treasurer to apply money coming into his hands, without reference to any particular tax levy from which it was derived, to the payment of such warrants in the order in which they were issued or presented for payment; and that this practice had been specially recognized by numerous acts of the legislature of the territory

and state, and by a general course of dealing on the part of the executive department. That these customs existed had been decided by the courts, which not only recognized the practice, but in numerous cases held that it was rightful. In doing so, they held that the warrants were entitled to payment in the order of their issue out of any moneys in the funds upon which they were drawn, and that they had practically the same force as judgments, so that proceedings in mandamus were the proper means by which to secure their payment. And these decisions have received the sanction of this court. See *Union Savings Bank & Trust Co. v. Gelbach*, 8 Wash. 497 (36 Pac. 467); *Cloud v. Town of Sumas*, 9 Wash. 399 (37 Pac. 305); *La France Fire Engine Co. v. Davis*, 9 Wash. 600 (38 Pac. 154).

It thus appears that it had been the universal custom among counties, recognized and upheld by every department of the government, to carry their indebtedness in the shape of these warrants, and to provide for their payment in accordance with their date of issue out of any moneys in the hands of the treasurer belonging to the fund upon which they were drawn, without reference to the tax levy from which such fund had been derived.

This being so, it will not be presumed that the legislature intended such a radical change in the manner of carrying the indebtedness of the counties and providing for its payment as would be wrought by the construction contended for by the appellants, unless the language used is such that no other construction is possible. Is the language relied upon such that we are compelled to construe it in accordance with the contention of appellants? We think not. There is nothing therein which in express terms requires the money to be derived from the tax levy to be applied to the pay-

ment of the expenses for the ensuing year. The most that can be claimed is that by reason of the fact that such expenses are taken into consideration in determining the amount of the levy, it should be inferred that the funds derived from such levy are to be applied only to the payment of such expenses. If there had been no provisions in our constitution and laws by which the counties were authorized to incur and carry an indebtedness, there might be some reason for drawing this inference from the language used. But when such language is construed in the light of the fact that counties have such right, no such inference can be drawn. The language used will be as well satisfied if it is held that it was the intention of the legislature that counties in debt should carry such indebtedness without decrease excepting such as might be brought about by the collection of the fifteen per cent. additional to the estimated expenses.

Under the circumstances above referred to it was and is the duty of the court to adopt this construction rather than the one contended for by appellants, even if that contended for by them would not lead to absurd results. And when the absurd results which would follow from the construction contended for are taken into consideration, their duty so to do, if otherwise doubtful, will be made clear. That absurd results would follow such construction is apparent from the most superficial examination of the circumstances referred to, and of the different provisions of the statutes. It is a matter of common knowledge that not more than fifty per cent. of the annual tax levy is promptly collected. From this fact it would follow that, if the construction contended for were adopted, one doing work for, or furnishing supplies to, a county, during the first half of each fiscal year, would be reasonably sure of

prompt payment; while another performing like labor or furnishing like supplies during the latter half of such year might never receive any pay therefor, and, if he ever did, could do so only after the payment of those who should do similar work or furnish like supplies in the first half of the succeeding fiscal year.

There is another reason why the construction contended for cannot be adopted, and that is that the same legislature which enacted the provision under consideration enacted other provisions which distinctly recognized the practice, which had so long existed, of carrying county indebtedness in the shape of warrants and paying them in the order of their issue or presentation, as above stated. It cannot be presumed that the legislature which directly recognized such a practice could have intended such a radical departure therefrom. The presumption to the contrary could be overcome only by language much more emphatic and unequivocal than that of the provision under consideration.

But it is claimed on the part of the appellants that the several statutory provisions which require warrants to be paid in the order of their issue can be given force, even although the construction contended for by appellants is adopted. They say it should be held that when the legislature provided that warrants should be paid in the order of their issue, it was meant that those of each fiscal year should be so paid. Words not in the statute would have to be understood as having been intended to authorize this construction of this provision, if unaffected by any considerations not contained in the law itself; and when construed in the light of the practice, known to the legislature, of treating all the outstanding warrants as a single class in determining the question of priority, it is impossible

to presume that the legislature intended by the language used that, in determining such priority, they should be divided into classes covering the several fiscal years in which they were issued.

Some cases have been cited on the part of the appellants which seem to support their contention. But when they are examined in the light of the constitutional and statutory provisions existing in the states in which they were decided, they furnish such contention little, if any support. Two cases from the State of California are relied upon; that of *San Francisco Gas Co. v. Brickwedel,* 62 Cal. 641, and *Shaw v. Statler,* 74 Cal. 258 (15 Pac. 833). In each of these cases it was held that the funds derived from a certain tax could be used only in payment of the expenses for the ensuing year; and if the provisions of the constitution and laws of California had been similar to ours these cases would be of great weight. But they were so dissimilar that to our mind they are entitled to no weight at all under the conditions existing here. Under the constitution and laws of that state counties were not authorized to incur an indebtedness exceeding in any year the income and revenue provided for such year. This being so, it could well be held that it was the intention that each year must take care of itself; that there would be no debt carried by the counties, and that the expenses for the ensuing year were alone to be provided for. Prior to the decision of these cases, the supreme court of California had, under provisions substantially the same as ours, held directly contrary to what was held in the cases above cited. See *Taylor v. Brooks,* 5 Cal. 332, and *McCall v. Harris,* 6 Cal. 281. And in a case decided subsequently, the supreme court of that state, when six of its judges were sitting together, substantially disapproved of the doctrine

therein announced, and stated that if it was a new question they should probably come to a contrary conclusion; and only allowed such doctrine to stand by force of the rule of *stare decisis.* See *Schwartz v. Wilson,* 75 Cal. 502 (17 Pac 449).

The fact that, under the constitutional and statutory provisions in force in California, there was the least doubt as to the rightfulness of the construction contended for, furnishes the highest authority for its absolute denial under those in force here.

A careful examination of the other cases cited will show that the provisions construed are so unlike ours that they can have little or no force here.

The appellants have sought to meet the argument against their position, growing out of the condition in which those would be left who held warrants upon the different county treasurers, if the construction contended for by them were adopted, by referring to the funding law which it was understood had been adopted by the legislature of 1895. (Laws, p. 297.) We do not deem it proper to go into an investigation of this statute. It could furnish no aid in determining what was in the mind of the legislature of 1893 when it passed the law under consideration.

In our opinion the superior court arrived at the proper conclusion, and its judgment will be affirmed.

ANDERS and GORDON, JJ., concur.

DUNBAR, J., not sitting.