[No. 2136.  Decided February 21, 1896.]

THE STATE OF WASHINGTON *on the Relation of W. E. Barton*, Respondent, v. GEORGE S. HOPKINS, *Auditor of Thurston County, et al.*, Appellants.

COUNTY INDEBTEDNESS — ASSIGNMENT OF TAXES — CONSTITUTIONAL LIMITATION OF INDEBTEDNESS — COMPUTATION — UNPAID TAXES ARE ASSETS — BONDED INDEBTEDNESS — EFFECT ON LIMIT FOR ORDINARY EXPENSES.

The county commissioners cannot assign a portion of the delinquent taxes of any year to a creditor of the county in payment of his claim.

Under the statutes of this state providing that warrants shall be paid in the order of their dates, without regard to the year in which they were issued, those for any particular year would not be a first charge upon the revenues for that year.

The cash assets of a county may be deducted from its outstanding indebtedness for the purpose of determining its amount within the meaning of the constitutional provision on the subject of indebtedness.

In computing the cash assets of a county for the purpose of making deductions from the amount of its indebtedness, not only the taxes levied for the current year, but unpaid delinquent taxes constitute a part of the cash assets of the county until the lien of the tax has been merged in a sale of the property.

The submission to the voters of a county of the question of the issuance of bonds for the purpose of erecting a court house in an amount which, together with the outstanding indebtedness, should not exceed five per cent. of the assessed valuation of the property in the county, the county at the time being indebted beyond the one and one-half per cent. limit, shows a manifest intent that the bonds to be issued for the special purpose of erecting a court house should have no relation to the one and one-half per cent. indebtedness then owing by the county, and consequently the amount of such bonds constitutes no part of the one and one-half per cent. of indebtedness allowed to be incurred for ordinary expenses.

Appeal from Superior Court, Thurston County.— Hon. T. M REED, JR., Judge.  Reversed.

*M. A. Root*, and *Haight & Owings*, for appellants.

*W. I. Agnew*, for respondent.

The opinion of the court was delivered by

HOYT, C. J.—The relator constructed certain water works for the county of Thurston, and to pay him therefor the board of county commissioners assigned to him a portion of the delinquent taxes of 1894, which he agreed to receive in full satisfaction of his claim. This proceeding was brought to compel the auditor and treasurer of the county to give effect to the order made in pursuance of the above arrangement.

In *State, ex rel. Barton, v. Hopkins*, 12 Wash. 602 (41 Pac. 906), we held that it was not within the power of the board of county commissioners to create a special fund upon which a warrant could be drawn in payment of the claim of the relator for the construction of these water works, and, if it were necessary to a decision of this case, we should feel compelled to hold that what was attempted by the order of the board of county commissioners, which by this proceeding is sought to be enforced, was substantially the same as that which we before held could not be done. In that case it was held that a special fund could not be created into which a sufficient amount of the taxes to be collected should be paid to satisfy a warrant drawn thereon to pay relator's claim. By the order involved in this proceeding substantially the same result was sought to be accomplished.

The only difference between this action of the board of county commissioners and that which was before held to be invalid, is that the taxes to be collected in the former case did not take on the special character involved in their being set aside for the payment of

this claim until after they were collected; while the present proceeding contemplated the impressment of such special character upon the taxes themselves before they were collected. The result to the relator and to the financial transactions of the county, however, would be precisely the same in the one case as in the other. But in view of the more important question which has been ably presented in the briefs of counsel and upon the oral argument, it is not necessary to say more upon this subject.

Appellants and respondent agree that the order which is sought to be enforced could only have been properly made by the board of county commissioners when there was no outstanding indebtedness of the county due and payable out of the general fund. It is also agreed by both parties that there was outstanding at the time this order was made a large amount of warrants which in form were payable out of such general fund. If any of these warrants evidenced a legal indebtedness of the county, it is agreed that it was beyond the power of the board of county commissioners to have made the order under consideration. But respondent claims that none of these warrants evidenced a legal indebtedness of the county, for the reason that the liabilities for which they were each issued were incurred when the county was in debt more than one and one-half per cent. of the value of its taxable property as shown by the last assessment roll. Appellants contend that these warrants are legal for the reason that they were issued in anticipation of the revenue coming to the county from the tax levy of the current year and the unpaid taxes upon the rolls for prior years, and for that reason constituted no part of the indebtedness of the county. This contention might be sustained, if under the law these warrants would

be first entitled to payment out of such revenue, but the statutes having provided that warrants should be paid in the order of their dates, without regard to the year in which they were issued, those for any particular year would not be a first charge upon the revenues for that year. See *Mason v. Purdy*, 11 Wash. 591 (40 Pac. 130).

But it does not follow that incoming revenues, which, under proper legislation, might be applicable to the payment of warrants issued after the limit of indebtedness had been passed, should not be taken into consideration in determining the amount of such indebtedness within the meaning of the constitutional provision. If under certain legislation the amount of outstanding claims against the county could exceed the constitutional limit to the amount of such unpaid taxes, there is foundation for the contention that under legislation which requires that the warrants should be paid in the order of their issue the amount of such unpaid taxes should be deducted from the total amount of the claims against the county to determine its indebtedness within the meaning of the constitutional provision.

The agreed facts in the case show that if these unpaid taxes are to be treated as a part of the cash assets of the county and such assets deducted from the amount of the indebtedness, the balance was less than the one and one-half per cent. authorized by the constitution, when many of the warrants were issued. From which it would follow that the tax could not be assigned for the payment of relator's claim, for the reason that there were other debts of the county which would be first entitled to payment. Hence, the material questions involved are, (1) can the cash assets of the county be deducted from the outstanding indebtedness

for the purpose of determining its amount within the meaning of the constitutional provision upon the subject? and (2) can the amount of the tax roll for the current year and the amount unpaid upon those of prior years be treated as a part of such cash assets?

The first question has been so often decided in the affirmative that it is not necessary for us to say more than that such is the established rule in all of the states.

The other question is one of more difficulty. Under constitutional provisions of substantially the same force as ours, the most of the states have adopted some rule under which the revenues to be collected for the current year could be made available prior to their collection. In California, where the constitution prohibits counties from incurring any indebtedness at all and the state from incurring an indebtedness of more than $300,000, it has often been held that the counties could incur obligations and issue warrants therefor payable out of the revenues for the current year to be thereafter collected, and that the state could do likewise to an amount greatly in excess of the $300,000, if such excess did not exceed the amount to be derived from the revenues of the current year. See *State v. McCauley*, 15 Cal. 430; *Koppikus v. Commissioners*, 16 Cal. 249; *People v. Pacheco*, 27 Cal. 207.

In Iowa certain municipalities were prohibited from incurring indebtedness in excess of five per cent. of their assessed valuation, and the supreme court of that state has frequently held that municipalities in debt to that amount could incur further indebtedness to the amount of the revenue to be derived from taxes assessed for the current year. See *Dively v. Cedar Falls*, 27 Iowa, 227; *Grant v. Davenport*, 36 Iowa, 396.

In Louisiana the interpretation of a similar constitutional provision is the same. See *Laycock v. Baton Rouge*, 35 La. An. 475.

Cases from other states to the same effect might be cited, and no case holding to the contrary has been called to our attention. We, therefore, feel compelled to agree with the contention that the amount of the taxes assessed for county purposes upon the tax roll for the current year must be deducted from the outstanding county indebtedness to determine its amount within the meaning of the constitutional prohibition.

Can the further contention, that a similar deduction should be made for the amount of taxes unpaid upon the rolls for prior years, be upheld? There is no good reason why it cannot. No distinction can be drawn between unpaid taxes upon the roll of the current year and like unpaid taxes upon those of prior years. Those of the current year have been by the courts treated as a part of the cash assets of the county for the reason that in legal contemplation their collection is certain; but the legal certainty of collection is in no manner affected by the fact that the taxes are not paid when due. If the credit of the person against whom the tax was assessed could alone be looked to there would by no legal certainty of the payment of taxes due or not due. The legal certainty grows out of the fact that the law presumes that the tax assessed upon property will be paid for the reason that the property is liable for the tax, and can be sold if the tax is not paid. If this legal presumption is warranted as to taxes when they are assessed, there is no reason why such presumption should not continue until the property has been sold for the purpose of realizing the amount of the taxes assessed against it. If the lien upon the property assessed is that which

makes its collection a legal certainty, such legal certainty will continue to exist as long as the lien does, and, as under the law the lien continues until the property is sold, until that stage has been reached the presumption of the certainty of collection remains in as full force as when the tax was first levied. If the taxes upon the roll of the current year should be treated as a part of the cash assets of the county, it follows as a logical conclusion that the amounts upon other rolls, so long as they remain a lien upon the property against which they are assessed, should be held to also constitute a part of such cash assets.

In most states the sale follows closely after the close of the year for which the taxes are assessed, and for that reason the status of taxes other than those assessed upon the roll for the current year has not been often questioned. Hence, the exact question under consideration has been decided in but few cases. One of these is that of *French v. Burlington*, 42 Iowa, 614. In that case the precise question here presented was decided in accordance with the claim of appellants. And in *Grant v. Davenport, supra*, it was held that a presumption existed that the receipt of the revenues provided for is a legal certainty.

From the decisions to the effect that taxes for the current year can be treated as a part of the cash assets of a municipality, it follows as a logical conclusion that under our system for the assessment and collection of taxes not only those of the current year but those unpaid, assessed for prior years, should be treated as a part of such cash assets, and upon such logical conclusion and upon the authority of the cases which have announced such a rule, we feel compelled to hold that unpaid taxes constitute a part of the cash

assets of the county until the lien of the tax has been merged in a sale of the property.

It follows that the county of Thurston was not, at the time it incurred the obligations for which some, if not all, of its outstanding warrants were issued, in debt beyond the constitutional limit; that such warrants evidenced a legal indebtedness of the county, and that for that reason the board of county commissioners had not the power to make the order in question.

The judgment will be reversed and the cause remanded with instructions to dismiss the proceeding.

ANDERS, DUNBAR and GORDON, JJ., concur.

SCOTT, J., concurs in the result.

### OPINION ON RE-HEARING.

HOYT, C. J.—Since the filing of the opinion in this cause a petition has been presented in which it is alleged that the remedy which the relator has against the county depends upon the question as to whether or not the $150,000 of the bonds of the county, which were issued for the purpose of erecting a court house, constitute a part of the one and one-half per cent. of indebtedness which the county could incur without a vote of the electors; that the facts upon which such question must be decided were fully presented by the record and fully argued in the briefs of counsel; that, though its decision was not necessary for the determination of the principal question involved, it is necessary to the determination of the rights of the parties to the controversy; that if it is not decided in this case, the relator will be compelled to institute another proceeding in which it will be necessary to decide as to the status of these bonds before his claim

against the county can be finally adjudicated. These allegations are agreed to by the parties and are justified by the record. We, therefore, deem it our duty to save the prosecution of another suit by deciding the question in this.

At the time these bonds were issued the county was in debt in an amount exceeding one and one-half per cent. of the valuation of the property therein, and the question submitted to the voters was the issuance of bonds of the county for the purpose of erecting a court house in an amount which, together with the outstanding indebtedness, should not exceed five per cent. of the valuation of the property. From the fact that at the time the question of the issuance of these bonds was submitted to the voters, the county was so indebted, and from the fact that the proposition, if carried, authorized an indebtedness to the full amount authorized by the constitution, it is claimed that these bonds do not constitute any part of the one and one-half per cent. of indebtedness authorized to be incurred without a vote of the people; that they constitute a part of the three and one-half per cent. indebtedness which could only be incurred after a vote authorizing it.

In the case of *Holmes & Bull Furniture Co. v. Hedges,* 13 Wash. 696 (43 Pac. 914), it was held by this court that power to incur indebtedness in the ordinary course of future business could be authorized by a vote of the people, unaccompanied by any proposition for the funding of such indebtedness. This being so, the effect of the vote of the people which authorized the issuance of the bonds in question must be determined by the intent which was made to appear by the ratification of the proposition submitted. This intent must be gathered from the form of the proposition

submitted, interpreted in the light of the facts exist-
ing at the time of the submission. From the form of
the submission in question, interpreted in the light of
the fact that the county was then indebted to the full
amount of the one and one-half per cent. authorized
without a vote, it clearly appears that it was the in-
tention that the bonds to be issued for the special
purpose of erecting a court house should have no re-
lation to the one and one-half per cent. of indebted-
ness then owing by the county, or which might
thereafter be incurred by it within the one and one-
half per cent. which it could incur without a vote.
This intent is manifest from the fact that the form of
the submission recognized the existing indebtedness
and provided that the bonds to be issued should not,
when added to the outstanding indebtedness, exceed
five per cent. of the valuation of the property of the
county. Hence the bonds must be included in the
other three and one-half per cent. authorized by the
constitution. The form of the submission was such
that when assented to it authorized the county to in-
cur an indebtedness to the amount of the five per
cent. authorized by the constitution, and since at the
time one and one-half per cent. of such indebtedness
was in existence, the right was given to continue to
carry such amount of ordinary indebtedness, and in
addition thereto such an amount in the shape of
bonds issued for the purpose of erecting a court house
as should not, when taken in connection with the
ordinary indebtedness, exceed the five per cent.

In the case of *Hunt v. Fawcett*, 8 Wash. 396 (36 Pac.
318), we held that it was not competent for the county
which was indebted to the amount of one and one-
half per cent. to issue bonds which had been voted by
the people, and apply the proceeds to the redemption

of outstanding warrants within the one and one-half per cent. limit for the purpose of issuing new warrants in their stead for current expenses.   But this holding is in no sense inconsistent with what has been hereinbefore said.   The circumstances surrounding the issue of those bonds as clearly disclosed an intent that they should constitute a part of the one and one-half per cent. of indebtedness authorized without a vote as the contrary intent was made to appear by the proceedings under consideration.   In that case it clearly appeared that the bonds were issued for the purpose of changing the form of indebtedness already incurred by the county; in this, that a new indebtedness was to be created for a specific object, which was to be in addition to the indebtedness then outstanding.

In our opinion, the proceedings relating to the issuance of the bonds in question show that it was the intention to authorize an indebtedness of one and one-half per cent. for ordinary purposes without a further vote of the people, and in addition thereto a bonded indebtedness to provide funds for the erection of a court house; and that the bonds in question, having been issued by virtue of this authorization, constitute no part of the one and one-half per cent. of indebtedness incurred for ordinary expenses.

SCOTT, ANDERS and GORDON, JJ., concur.

DUNBAR, J., dissents.