FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 OCT 30 AM 11:54

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOHN R. FERLIN and MARY E. FERLIN, trustees of the FERLIN FAMILY LIVING TRUST; J & M'S, LLC, a Washington limited liability company; BROOKS MANUFACTURING CO., a Washington corporation, and ROOSEVELT LAND COMPANY, LLC, a Washington limited liability company,

Appellants,

v.

CHUCKANUT COMMUNITY FOREST PARK DISTRICT, a metropolitan park district; THE CITY OF BELLINGHAM, a Washington State municipal corporation,

Respondents,

and

WHATCOM COUNTY, a Washington State municipal corporation; STEVEN OLIVER in his capacity as the Whatcom County Treasurer,

Defendants.

No. 75561-7-I

DIVISION ONE

PUBLISHED OPINION

FILED: October 30, 2017

BECKER, J. — The appellants own real property subject to a tax imposed by the new Chuckanut Community Forest Park District in south Bellingham.

Appellants claim the tax is illegal because the revenue is passed on to the city of Bellingham to pay off a loan needed by the city to buy the park property. The district retained an interest in the property through a conservation easement granted by the city, and its taxing authority exists independent of the city. We conclude the district's arrangement with the city does not exceed the district's statutory authority and it does not violate the constitutional requirement for uniformity in taxation. The trial court properly dismissed the taxpayers' suit on summary judgment.

## FACTS

The material facts are not disputed. In 2011, the city of Bellingham purchased 82 acres of forested land located in south Bellingham. The property, locally known as the "Hundred Acre Wood," is adjacent to the north end of Chuckanut Drive and the Fairhaven neighborhood. It includes trails and wetlands and valuable habitat for a variety of plant and animal species.

The city purchased the forest for $8.2 million after the previous owner, a developer, went through foreclosure. To finance part of the purchase, the city used tax revenue and park impact fees. The remainder was made up by an interfund loan of $3.2 million from the Greenways Endowment Fund, which is earmarked for the payment of park maintenance costs. The city was obligated to find a source of funds to pay back the $3.2 million loan on a timely basis. One possibility was to carve off 25 acres to sell for development.

The idea of selling any part of the property was unpopular with a group of citizens who wanted the forest to remain intact. As an alternative, the citizens

2

proposed to create a park district as permitted by chapter 35.61 RCW. They proposed that the park district could use its power of taxation to raise $3.2 million. The district would then transfer the revenue to the city to enable the city to pay back the interfund loan.

A park district may be created either by local government resolution or by citizen petition. Either way, a ballot proposition must be submitted to the voters of the area to be included and the creation of the district must be approved by majority vote. RCW 35.61.020(1). In this case, the district was created by citizen petition. The proposal for the creation of a park district was submitted to voters in south Bellingham in a special election on February 12, 2013.

The ballot measure asked, "Shall the Chuckanut Community Park District with boundaries encompassing [13 named precincts within the City of Bellingham] be created?" According to the explanatory statement, the district would have all powers provided in chapter 35.61 RCW, including the power to levy a property tax. The intended property tax levy rate was 28 cents per $1,000 in assessed value. This rate would provide a dedicated funding source for repayment of the interfund loan in 10 years. The proposition passed by a majority vote of 51.73 percent of the electorate. The Chuckanut Community Forest Park District was "created as a municipal corporation effective immediately upon certification of the election results." RCW 35.61.040.

In November 2013, the park district board, made up of commissioners elected during the special election, passed a resolution authorizing collection of a property tax. The total assessed value of property in the district was

3

$1,510,071,867. Based on a tax rate of 28 cents per $1,000 in assessed value, the total amount to be collected under the levy was $422,820.12. This amount was included in the county's ordinance authorizing the levy of taxes for 2014.

By this time, the city had already agreed to consider rezoning the 82 acres along with 29 acres of adjacent city-owned property from multi-family residential to public open space. To provide additional protection for the forest in its natural state, the park district commissioners negotiated an interlocal agreement with the city under which the city granted a conservation easement to the district. The city granted the easement "in consideration for: (1) the Park District paying off the Loan, accrued interest on the Loan and future interest; and (2) the Park District formally dissolving in accordance with RCW 35.61.310 after the Loan, accrued interest and future interest are paid off by the Park District." The city retained control and ownership of the property, "subject to" the conservation easement. The interlocal agreement requires that if the property is rezoned, the city will initiate the requisite public process for establishment of a park on the property consistent with the intent of the conservation easement and, within 10 years, adopt a park master plan for the property. A separate document laid out the terms of the conservation easement. These agreements were finalized in January 2014.

The appellants are taxpayers who own property within the park district and were taxed in accordance with the 2014 levy. They paid the tax under protest, then filed this suit in July 2014. Their complaint asked the court to enjoin

4

collection of the tax. An injunction may be issued to prevent collection of a tax if the law under which the tax is imposed is void. RCW 84.68.010.

The case came before the trial court in May 2016 on cross motions for summary judgment. The park district and the city defended the validity of the park district and the levy. The trial court granted summary judgment in favor of the defendant municipalities. The taxpayers appeal from that order.

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. Mahoney v. Shinpoch, 107 Wn.2d 679, 683, 732 P.2d 510 (1987). Summary judgment is proper when, viewing the evidence and available inferences in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

## VALIDITY OF DISTRICT FORMATION

"A metropolitan park district may be created for the management, control, improvement, maintenance, and acquisition of parks, parkways, boulevards, and recreational facilities." RCW 35.61.010. The taxpayers contend the Chuckanut Community Forest Park District is not a legitimate park district and was void at its inception because it was not created for any of the itemized statutory purposes. In their view, the documented history of events and communications leading up to the vote is decisive evidence that the district was created for the sole purpose of raising revenue for the city. For example, the "Statement For" in the ballot measure said, "The singular purpose of this Park District is to repay the loan that enabled the City's purchase of the Chuckanut Community Forest (aka Chuckanut

5

Ridge), thereby assuring its preservation as a park, forever. The alternative is that an unknown portion of the land may be sold."

RCW 35.61.010 lists permissible purposes of *actions* a park district may take once it is created. An *action* taken by a municipal corporation may be subject to challenge on the basis that it exceeds powers expressly or implicitly granted by statute. See, e.g., City of Tacoma v. Taxpayers of City of Tacoma, 108 Wn.2d 679, 695, 743 P.2d 793 (1987) (challenge to city's energy conservation program); Okeson v. City of Seattle, 150 Wn.2d 540, 78 P.3d 1279 (2003) (challenge to city ordinance that shifted responsibility for costs of providing streetlights to ratepayers of the city-owned electrical utility). The taxpayers offer no authority for declaring a municipal corporation void ab initio on a theory that the individuals who voted to create it had improper purposes. We reject their argument that the park district was void at inception and turn to their argument that the tax levy—an *action* taken by the park district—is void because it does not serve any of the purposes of park districts identified in RCW 35.61.010.

## VALIDITY OF THE LEVY

If a municipal corporation acts in excess of its statutory authority, its action may be challenged as ultra vires. "Ultra vires acts are those performed with no legal authority and are characterized as void on the basis that no power to act existed, even where proper procedural requirements are followed." S. Tacoma Way, LLC v. State, 169 Wn.2d 118, 123, 233 P.3d 871 (2010). If the park district levy is ultra vires, the levy—not the park district—will be ruled invalid.

The taxpayers contend the levy is invalid because the park district did not "acquire" a park and it does not "manage," "control," "improve" or "maintain" a park, the functions authorized by RCW 35.61.010. They say all these functions are performed by the city as the owner of the property and the district's only function is to collect revenue and pass it through to the city. Paying off the city's debt, they argue, is not a legitimate park purpose.

In exchange for agreeing to pass its tax revenues on to the city, the park district did not acquire a park, but it did acquire a conservation easement that runs with the property in perpetuity. When the park district dissolves, its interest in the conservation easement is to be assigned to a qualified third party organization. Through the terms of the conservation easement, the park district exerted substantial control over the way the forest will be used and managed in years to come. For instance, the easement virtually eliminates the city's ability to make residential, commercial, or industrial use of the property. With limited exceptions, the city may not build or place roads or buildings of any type on the property; may not operate motor vehicles on it; may not remove trees, excavate, or grade; and may not provide athletic facilities or ball fields of any kind. The park district retains the right to enter the property, to observe and monitor compliance with the terms of the easement, and to enjoin and abate any activity that violates the easement.

The fact that the levy is being used to pay off the city's loan does not mean the levy monies are not being raised and spent for a legitimate park purpose. Enabling the city to pay off the loan is a means of preserving the entire

property as a park, including acreage that most likely would not be otherwise protected from development. To act under the authority of RCW 35.61.010, a metropolitan park district need not own title to real property in fee simple. A metropolitan park district is specifically authorized to acquire any lesser interest, including an easement or other contractual right "necessary to protect, preserve, maintain, improve, restore, limit the future use of, or otherwise conserve, selected open space land" for public use or enjoyment. RCW 84.34.210.

We conclude the district did not exceed its statutory authority by adopting the levy.

## UNIFORMITY OF TAXATION

Appellants contend the levy violates the uniformity requirement of article VII, section 1 of the Washington Constitution: "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax." Because of this provision, the city of Bellingham cannot impose a tax on only a portion of its residents. The taxpayers claim the park district is a "shell" or "strawman" created to collect a tax for the city so the city can do indirectly what it may not do directly. According to their brief, "The Levy is a de facto ad valorem tax by the City of Bellingham, and as such it is unconstitutional because it is imposed on only a portion of the residents within the City's corporate boundaries."

To illustrate their theory, the taxpayers cite Rider v. County of San Diego, 1 Cal. 4th 1, 820 P.2d 1000, 2 Cal. Rptr. 2d 490 (1991). The case centered on California's constitutional requirement for two-thirds voter approval of special

taxes imposed by cities, counties, and "special districts." CAL. CONST. art. XIII A, § 4; Rider, 1 Cal. 4th at 5.

The supermajority provision was adopted into the state constitution by a tax-cutting initiative in 1978. In 1982, the California Supreme Court held that an agency was a "special district" subject to the requirement of two-thirds voter approval only if it had the power to impose a tax on real property. Los Angeles County Transp. Comm'n v. Richmond, 31 Cal. 3d 197, 201, 643 P.2d 941, 182 Cal. Rptr. 324 (1982). In a dissent that would become a majority opinion in Rider, Justice Richardson observed that the majority's analysis could be readily used to circumvent the supermajority vote requirement of section 4 "by the simple creation of a district which is geographically precisely coterminous with a county, but which lacks its real property taxing power." Richmond, 31 Cal. 3d at 213 (Richardson, J., dissenting).

> The majority has cut a hole in the financial fence which the people in their Constitution have erected around their government. Governmental entities may be expected, instinctively, to pour through the opening seeking the creation of similar revenue-generating entities in myriad forms which will be limited only by their ingenuity.

Richmond, 31 Cal. 3d at 213 (Richardson, J., dissenting); see Rider, 1 Cal. 4th at 8.

In 1985, San Diego County tried and failed to gain a two-thirds vote for a county sales tax increase for criminal justice facilities. Rider, 1 Cal. 4th at 9. In 1987, the Richmond decision inspired enactment of a statute allowing creation of the San Diego County Regional Justice Facility Financing Agency as a "limited purpose special district" with no power to impose a property tax. Rider, 1 Cal.

4th at 9. The new agency's territorial boundaries were the same as those of San Diego County. The agency directors proposed a special sales tax for the limited purpose of constructing and operating the county's justice facilities, obtained 50.8 percent voter approval, and began collecting the tax. Taxpayers challenged the tax in court.

The trial court found that the new facility financing agency was created solely for the purpose of avoiding the supermajority requirement and was a deliberate attempt to circumvent it. Rider, 1 Cal. 4th at 8. That finding was amply supported by the record on appeal, but the California Supreme Court was less concerned with the purpose for which the agency was formed and more concerned with the intent of the framers of the supermajority requirement and the voters who adopted it. Rider, 1 Cal. 4th at 11. The court saw that Justice Richardson's prediction had come to pass and concluded that the facility financing agency had to be deemed a "special district" despite its lack of power to levy a property tax. Richmond's limitation of the term "special district" to those districts possessing property tax power frustrated the voters' intent to restrict the ability of local governments to impose new taxes to replace property tax revenues lost under other provisions of the initiative. Rider, 1 Cal. 4th at 11. Under Rider, a "special district" includes "any local taxing agency created to raise funds for city or county purposes to replace revenues lost by reason of the restrictions of Proposition 13." Rider, 1 Cal. 4th at 11. The court devised a six-factor test to analyze whether a new taxing agency "is *essentially controlled* by

10

one or more cities or counties that otherwise would have had to comply with the supermajority provision of section 4." Rider, 1 Cal. 4th at 11-12.

The Washington case that most resembles Rider is Granite Falls Library Capital Facility Area v. Taxpayers of Granite Falls Library Capital Facility Area, 134 Wn.2d 825, 836, 953 P.2d 1150 (1998). There, a statute authorized the creation of special districts to finance the construction of libraries. Taxpayers invoked article VII, section 1 of the Washington Constitution to challenge the validity of a tax imposed in a portion of Snohomish County to pay for and retire bonds for local library facilities. They claimed that the Snohomish County Council was "the true taxing authority" and the tax violated the constitution because it would not be imposed uniformly throughout Snohomish County. Granite Falls, 134 Wn.2d at 833. The court rejected this argument and concluded the special district was "sufficiently independent to levy taxes." Granite Falls, 134 Wn.2d at 835. The court's analysis shows that Washington's constitutional requirement for uniformity in taxation reflects a concern, somewhat similar to the concern in Rider, to ensure that a special localized taxing district is not controlled by the city or county of which it is a part. But the court concluded that the plain language of the statute declared a library facility district to be an independent taxing authority and vested it with sufficient express and implied powers to carry out all of its essential functions without reliance upon other governmental entities. Granite Falls, 134 Wn.2d at 835.

The same is true here. A metropolitan park district may include territory located in portions or all of one or more cities or counties, or one or more cities

and counties. RCW 35.61.010. A metropolitan park district has specific statutory authority to levy property taxes. RCW 35.61.210. It is vested with sufficient express and implied powers to carry out all of its essential functions without reliance upon other governmental entities.

The Chuckanut Community Forest Park District came into being in compliance with a statute that has been in place for 100 years without any argument that it frustrates the intent of our constitution's uniformity requirement. The appellants concede that the district has authority to tax real property within its boundaries and the tax at issue here is uniformly imposed within the district. The park district's achievement of obtaining a conservation easement from the city shows that it is not a shell for the city. The district is statutorily and organizationally distinct from the city. We conclude the district can impose a tax within its boundaries without running afoul of the uniformity requirement.

## OBJECT OF TAXATION

The taxpayers also claim the tax levy violates article VII, section 5 of the Washington Constitution: "No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." The taxpayers argue the levy is unconstitutional because the park district's resolution establishing the levy, passed in November 2013, does not mention any object of the tax.

This argument lacks merit as it is virtually identical to an argument rejected in Hogue v. Port of Seattle, 54 Wn.2d 799, 809, 341 P.2d 171 (1959). The taxpayers in that case sought to enjoin, on numerous grounds, the collection

12

of a two-mill tax levied by the Port of Seattle under the authority of statutes enacted to facilitate harbor improvements and promote industrial development. One ground of argument was that the object of the tax was not definitely stated in the statute as allegedly required by the second clause of article VII, section 5 of the Washington Constitution. The court's analysis is contained in a single paragraph:

> There is no merit in this contention. It is questionable whether the constitutional provision even applies to a statute of this type. Rather than directly imposing a tax, the 1957 act merely authorizes a tax levy. In any event, the object or purposes of the tax are set forth in the 1955 act, and by reference are as much a part of the 1957 act as if they had been explicitly written therein. Pacific First Fed. Sav. & Loan Ass'n v. Pierce County, 27 Wn. (2d) 347, 178 P. (2d) 351 (1947), and cases cited.

Hogue, 54 Wn.2d at 809.

The park district had authority to levy a property tax under RCW 35.61.210(1). Thus, the levy was "in pursuance of law." WASH. CONST. art. VII, § 5. It is questionable whether the levy resolution is a "law imposing a tax" any more than the statute in Hogue was. "The law by which counties are authorized to levy a tax is not, strictly speaking, a law imposing a tax." Mason v. Purdy, 11 Wash. 591, 594, 40 P. 130 (1895). But in any event, under Hogue, the constitutional requirement is satisfied because the object or purposes of a park district levy are set forth in RCW 35.61.010. Should greater specificity be required, we observe that on the same date they passed the levy resolution for 2014, the park district commissioners adopted a budget detailing the expenses they anticipated for 2014, primarily the repayment of the city's loan from the

No. 75561-7-I/14

Greenways Endowment Fund.  We find no violation of article VII, section 5 of the Washington Constitution.

Affirmed.

WE CONCUR:

Becker, J.

Mann, J.

Appelwick, J.

14