FAZENDE *et al. v.* CITY OF HOUSTON.[1]

*(Circuit Court, E. D. Texas. March 1, 1888.)*

. MUNICIPAL CORPORATIONS—BONDS—DIVERSION OF FUNDS—INJUNCTION.

A municipal corporation, under an ordinance authorized by its charter, issued some bonds to provide a fund for building a market-house. By the terms of the bonds the revenue of the market was to be devoted to the payment of the interest on the bonds and to form a sinking fund to redeem them. After the issuance of the bonds, the corporation obtained a new charter, authorized by which they devoted the revenue of the market to other purposes than that provided for in the ordinance authorizing the bonds. Plaintiffs, holders of some of these bonds, brought a bill in equity to compel specific performance, and asked for an injunction to prevent further diversion of the market-house revenues. *Held,* the facts being admitted, that an injunction *pendente lite,* as prayed for, should issue.

2. SAME—ORDINANCES—CONSTITUTIONAL LAW—IMPAIRING OBLIGATIONS OF CONTRACTS.

A municipal corporation, under an ordinance authorized by their charter, issued some bonds to provide a fund for building a market-house. By the terms of the bonds the revenue of the market was to be devoted to the payment of the interest on the bonds, and to form a sinking fund to redeem them. *Held,* that as the ordinance was authorized by the charter, and therefore valid, it constituted a contract between the holders of the bonds and the city, and that subsequent ordinances of the city making any other disposition of the market revenue were void, and that so much of a charter granted the city after the issue of the bonds as authorized the city council to divert any of such revenue from the special fund as contracted in the ordinance under which the bonds were issued was inoperative, as impairing the obligations of a contract in violation of Const. U. S. art. 1, § 10.[2]

In Equity. Bill for specific performance and injunction.

The city of Houston, authorized by its charter, passed an ordinance providing for the issuance of bonds to raise a fund for building a market. Under the terms of the ordinance the revenue from the market was to be devoted to the payment of the interest on the bonds, and to constitute

---

[1] Reported by Chas. B. Stafford, Esq., of the New Orleans bar.

[2] By the obligation of a contract is meant the means which, at the time of its creation, the law affords for its enforcement. Where a contract is made upon the faith that taxes will be levied, legislation repealing or modifying the taxing power of a corporation so as to deprive the holder of the contract of his remedy, is unconstitutional, because impairing the obligation of a contract. State v. Police Jury, 4 Sup. Ct. Rep. 648.

Respecting other legislation, considered with respect to the constitutional inhibition against impairing the obligation of contracts, see Seibert v. U. S., 7 Sup. Ct. Rep. 1190; Water Co. v. Borough of Easton, Id. 916; Water-Works Co. v. Water-Works Co.. Id. 405; Fisk v. Police Jury, 6 Sup. Ct. Rep. 331, and note; Bridge Co. v. Railway Co., (Pa.) 8 Atl. Rep. 233; State v. Jersey City, (N. J.) Id. 123; State v. Railroad Co., (N. J.) 7 Atl. Rep. 826, note; Railroad Co. v. City of Savannah, 30 Fed. Rep. 646; Willis v. Miller, 29 Fed. Rep. 238; Gas-Light Co. v. City of Saginaw, 28 Fed. Rep. 529, and note; Com v. Maury, (Va.) 1 S. E. Rep. 185; Com. v. Weller, Id. 102; Com. v. Jones, Id. 84, and note; Bockover v. Superintendent, (Mo.) 3 S. W. Rep. 833; Tait's Ex'r v. Asylum, (Va.) 4 S. E. Rep. 697.

a sinking fund to cancel them. Subsequently the city obtained a new charter. Under its authority the revenue of the market was used for other purposes than provided for in the bond ordinance. Plaintiffs, holders of these bonds to the amount of $78,000, filed a bill in equity to prevent further diversion of the market fund, and praying for specific performance and for a receiver.

*E. H. Farrar*, for plaintiffs.

*Brady & Ring*, for defendant.

PARDEE, J. There can be no question that the ordinance of the city of Houston passed November 13, 1871, authorized the issuance of bonds for the purpose of defraying the expenses of improving the public market by building a new market-house; nor that, by the same ordinance, if words have any meaning, the said bonds were agreed to be secured by the appropriation setting apart and pledging, as a special fund, to pay the interest and to create a sinking fund to pay the principal, of all the money and other revenues accruing after the 1st day of January, 1872, in any manner from the public market, market-house, and market-houses, by renting, leasing, or otherwise conducting or managing the same. As the contemplated bonds were issued and the money raised and expended under said ordinance, there can in law be no doubt that the said ordinance constituted a valid, binding contract between the holders of said bonds and the city of Houston, if the mayor, aldermen, and inhabitants of the city of Houston had authority under their legislative charter to pass the said ordinance and enter into said contract. The charter of the city of Houston, in force at the time, was passed by the legislature of the state of Texas August 2, 1870. See chapter 38 of the Laws of Texas, 1870, p. 68. The twenty-second section of that charter reads as follows:

"That the mayor and aldermen of the city of Houston shall have power to appropriate so much of the revenues of the city, emanating from whatever source, to the improvement of the public market, roads, and bayou, within or without the corporation, leading to the city, as they in their wisdom may from time to time deem expedient; and for the furtherance of these objects, they shall have power to borrow money upon the credit of the city, and issue the bonds of the city therefor; but no sum of money shall be borrowed at a higher rate of interest than 10 per cent. All bonds shall specify for what purpose they were issued, and shall not be invalid if sold for less than their par value; and when any bonds are issued by the city, a fund shall be provided to pay the interest and create a sinking fund to redeem the bonds, which fund shall not be diverted nor drawn upon for any other purpose, and the city treasurer shall honor no draft drawn on said fund, except to pay interest upon or redeem the bonds for which it was provided."

And section 39 of said charter reads:

"That the city council of Houston shall have power to make contracts with any person or corporation for the improvement of the streets, bayou, or roads leading to the same, or to lease the market or other revenues of the city for any term of years, and to do and perform all acts that they may deem advisable for the interests of the city."

Here is authority to appropriate the revenues of the city, emanating from whatever source, to the improvement of the public market, to borrow money upon the credit of the city therefor, to issue bonds, to provide a fund to pay the interest, and create a sinking fund to redeem the bonds, and to lease the market or other revenues of the city for any term of years. The authority seems full and complete. That some of the revenues of the public market are derived from rents and charges in the nature of "occupation taxes," and to that extent are within the legislative control of the city council, does not affect the validity of the ordinance nor of the legislative authority to pass the ordinance. As the ordinance was authorized by the charter, and therefore valid, it constitutes a contract between the holders of the market-house bonds and the city of Houston, and it follows as settled jurisprudence that the ordinances of the city of Houston making any other disposition or appropriation of the market revenues than as specified in the ordinance under which the bonds were issued are void and have no legal effect, and that so much of the present charter of the city of Houston as authorizes the city council of the city of Houston to divert any of the market-house rents or revenues from the special fund, as contracted for in said ordinance under which said bonds were issued, is inoperative as impairing the obligations of the said ordinance and contract, because in violation of article 1, § 10, of the Constitution of the United States.

The showing made on this hearing—and the facts are undisputed—is that the defendants are not applying the revenues of the market in accordance with the terms of said ordinance and contract, but have been and are diverting the same to other purposes, such as paving streets, paying salaries, insurance, repairs, grocery bills, interest on other bonds, and for other purposes, all in violation of said contract; that none of said revenues have been devoted for many years to the payment of the interest to which they are pledged, save when ordered by judgment of court, or when the funds on hand could be used to purchase coupons at a large discount; that there is now a fund on hand derived from said revenues which the defendants refuse to apply to the payment of interest on said market-house bonds, but which is held for other purposes; and that complainants are the holders of a large number of said bonds, amounting in principal to the sum of $78,000, on which the interest has not been paid since 1874, although duly demanded and judgments obtained thereon. The scope and object of the bill in this cause is to prevent further diversion of the market-house revenues, and to enforce a specific performance of the ordinance passed November 13, 1871. The jurisdiction is undisputed, and the occasion for its exercise seems clear. The pending application is for an injunction *pendente* and a receiver. The appointment of a receiver is not at present insisted on, and may well wait further proceedings in the premises. The injunction on the showing, made on the authority of *Maenhaut* v. *New Orleans*, 2 Woods, 108, and the adjudicated cases there cited, and on general equity principles, should issue substantially as moved for, that the fund now in hand and to ac-

crue should be preserved until final decree. The following order may be entered on the minutes, and process issue accordingly:

This cause came on to be heard before DON A. PARDEE, Esq., circuit judge in chambers, on the motion of the complainants for an injunction pending the suit and for a receiver, after due notice to the defendants, and was argued by E. H. Farrar, Esq., for the complainants, and by Messrs. Brady & Ring for the defendants; when, considering the evidence offered and the reasons filed, it is ordered that an injunction *pendente lite* issue herein, commanding and enjoining the defendants, the mayor, aldermen, and inhabitants of the city of Houston, and George R. Bringhurst, secretary and treasurer of said city of Houston, and each of them, from diverting directly or indirectly any portion of the rents, revenues, tolls, income, and receipts of the market-house and market-houses of the city of Houston from the market-house bond fund, as constituted and provided for in the ordinance passed November 11, 1871, and approved by the mayor November 13, 1871, authorizing and providing for the issue of bonds for improving the public market, and from using or setting apart said rents and revenues, tolls and income for any other fund or purpose than the market-house bond fund as provided in said ordinance, and from using or applying said market-house bond fund accrued and to accrue in any other way or manner than for the payment of interest, and to create a sinking fund as provided in the aforesaid ordinance, any ordinance or ordinances of the city of Houston to the contrary notwithstanding. This injunction to take the place of the restraining order heretofore issued in this cause. The matter of appointing a receiver in this cause is continued indefinitely.