[No. 2172.   Decided April 8, 1896.]

FRED. EIDEMILLER, *Appellant,* v. THE CITY OF TACOMA
et al., *Respondents.*

MUNICIPAL CORPORATIONS — ORDINANCES — REPEAL BY IMPLICATION —
ORDER OF PAYMENT OF WARRANTS — MANDAMUS — CONSTITUTIONAL
LAW — OBLIGATION OF CONTRACTS.

A charter provision requiring the payment of salaries monthly merely contemplates that warrants therefore shall be issued monthly, not that payment shall be made in cash.

A warrant upon the general fund of a city, issued while ordinances were in force providing that revenues accruing to the city, with certain exceptions, should be credited to the general fund, and that warrants should be redeemed by the treasurer in the order of their number and date, should be paid in the order of its issuance if there are sufficient funds, although such funds may have been raised under an ordinance providing for the raising of revenue to meet municipal expenses for a particular year and proportioning such revenue to funds other than the general fund.

An ordinance requiring warrants to be redeemed in the order of their number and date is not repealed by an ordinance apportioning the revenue raised to distinct funds and providing for its disbursement.

A law providing for the diversion of a fund out of which a warrant was to be paid in the order of its issuance is invalid as to any warrants issued prior to its passage, on the ground that it would impair the obligation of a contract.

A warrant holder is not compelled to resort to mandamus proceedings to compel the city to levy a tax for the purpose of paying its obligation to him, but when there is or should be money in the fund upon which his warrant is drawn, he has a right of action against the city to prevent such money's being applied to the payment of subsequent claims.

A city cannot defeat the payment of a warrant upon the ground of necessity of using its revenues for existence, until it has exhausted all its available means of securing revenue.

Appeal from Superior Court, Pierce County.— Hon. JOHN C. STALLCUP, Judge.   Reversed.

*Murray & Christian (Alfred E. Buell,* and *Crowley, Sullivan & Grosscup,* of counsel), for appellant.

*James Wickersham,* and *Stacy W. Gibbs,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.— Appellant brought this action to compel the city treasurer of the city of Tacoma to pay a certain warrant for the sum of $303.67.   Said warrant was made and delivered by the city of Tacoma on September 29, 1893; was presented for payment on September 30, 1893; and the treasurer of said city then and there indorsed upon said warrant, "Not paid for want of funds."   It is conceded in this case that there are sufficient funds in the treasury to pay the warrant in controversy if it is legal to pay it out of the revenues raised by the city for the present fiscal year; the contention of the appellant being that this

warrant should be paid in the order of its issuance, regardless of the revenue that is raised in any particular year, while the contention of the respondents is that the revenues now available to the city can be applied only to the payment of debts incurred during the year, or for the expenses necessary to the running of the city during the fiscal year.

On July 28, 1880, ordinance No. 29 was passed by the city of Tacoma, a city of the first class, which ordinance provides, among other things, that the treasurer shall redeem warrants in the order of their number and date. On March 23, 1888, ordinance No. 194 was approved, providing among other things, that all revenue accruing to the city of Tacoma, except the tax levy for a "road property tax," a "poll tax," and money arising from street improvement assessments, or other improvement assessments, or special tax levied for a special purpose, shall be collected and credited to the general fund. On November 2, 1895, subsequent to the issuance of this warrant, the city of Tacoma passed an ordinance (No. 1029) providing for a levy of 11 mills upon the dollar upon all the taxable property of the city, for the purpose of raising sufficient revenue to carry on the different departments of the municipal government of the city for the fiscal year beginning on July 1, 1895, and ending on June 30, 1896, and proportioning the funds to be raised from such assessment to the interest fund, to the salary fund, and to the general expense fund. On February 15, 1896, ordinance No. 1051 was passed, providing for the disbursement of the money raised by means of the assessment above mentioned, and under the provisions of which ordinance the fund raised by the assessment would be absorbed to the exclusion of claims against the general fund; and it is

conceded that, if the tax is diverted and appropriated
as contemplated by ordinances 1029 and 1051, the
payment of this warrant will be postponed for an in-
definite period, while other and subsequent warrants,
drawn under the provisions of ordinance 1051, will
be paid. It is claimed by the appellant that, at the
time of the issuance of this warrant, ordinances Nos.
29 and 194 were in effect; that the warrant was issued
under the provisions of those ordinances; and that
he has the right to have his warrant paid in the order
of its number and date. The respondents' contention
is twofold: First, that, by subsequent enactments, the
provisions of ordinances Nos. 29 and 194 have been
repealed; and, second, that the law providing that a
treasurer shall redeem warrants in the order of their
number and date should be construed to mean that
such warrants should be redeemed in the order of
their number and date in the issuance of each partic-
ular year. It is also claimed by the respondents that,
under the provisions of the act of the legislature of
1893 (Laws 1893, p. 167, § 2), the right of the appellant
is modified. This provision, however, in regard to
cities, we do not think is any broader than the provi-
sion in regard to county assessments. In any event,
it would have to be brought into operation by enact-
ments by the city government, so that the question re-
curs on the proposition as to whether or not ordinances
Nos. 29 and 194 have been repealed by subsequent en-
actments of the city. Construing the enactments by the
city as we would enactments by the legislature of the
state, we find nothing that convinces us that it was the
intention of the ordinances cited by the respondents
to change the general system of payment of warrants
as directed in ordinance No. 29.

We do not think there is anything in respondents'

contention that, under the provisions of the charter, salaries are to be paid monthly. This means nothing more than that warrants shall be issued monthly. It does not, in our judgment, contemplate that salaries shall especially be paid in cash. It is the usual custom of the different departments of the government to issue warrants for the payment of salaries, and there is nothing in the charter that would indicate that these particular warrants were to be preferred.

Outside of these contentions, and on the general principles involved in the case, this case falls squarely within the rule announced by this court in *Mason v. Purdy*, 11 Wash. 591 (40 Pac. 130) where the court, in an exhaustive opinion, held that § 63 of the revenue act of 1893, declaring that county taxes shall be based upon the estimated county expenses for the ensuing year, cannot be construed as restricting the funds arising from the annual tax levy in any given year to the payment of such obligations only as may be incurred during the fiscal year following such levy. That case was decided upon well-prepared briefs, which, while not probably so elaborate as the respondents' brief in this case, presented all the points here involved; and it was there held that, under our system of laws, which permits the carrying of an indebtedness, the object of the law in providing for the ascertainment of the expenses of the fiscal year was not for the purpose of confining the payment of the money, raised under the assessment provided for, to bills contracted in that year alone, but was for the purpose of eliciting information which would prevent the extension of the debt beyond the constitutional or legal limit, still allowing payments to be made upon prior warrants, but assuring the redemption of as many warrants in value as claims were engendered against the county during the year. The

effect of § 5 of art. 7 of the constitution was discussed, and the court said:

"For these and other reasons, it is our opinion that the contention of the appellants that the object of the tax levied by the board of county commissioners, within the meaning of this constitutional provision, was the payment of all the county expenses for the ensuing fiscal year, and not the payment of the different classes of county expenses as therein provided for and segregated, cannot be sustained. It follows from what we have said, that, under the constitution, the legislature was at liberty to provide for the levy of taxes by the board of county commissioners for the payment of obligations already incurred by the county, as well as those thereafter to be incurred. The only remaining question is to decide whether or not it has done so."

And the court, after referring to the circumstances existing in the several counties of the state, which were presumed to have been within the knowledge of the legislature at the time it enacted the law in question, concludes:

"That these customs existed had been decided by the courts, which not only recognized the practice, but in numerous cases held that it was rightful. In doing so, they held that the warrants were entitled to payment in the order of their issue, out of any moneys in the funds upon which they were drawn, and that they had practically the same force as judgments, so that proceedings in mandamus were the proper means by which to secure their payment. . . . It thus appears that it had been the universal custom among counties, recognized and upheld by every department of the government, to carry their indebtedness in the shape of these warrants, and to provide for their payment, in accordance with their date of issue, out of any moneys in the hands of the treasurer belonging to the fund upon which they were drawn, without reference to the tax levy from which such fund had been derived."

In fact the question was so exhaustively argued that it seems almost impossible to discuss the questions raised by this brief without an unnecessary repetition of the argument used by the court in the case above cited. The doctrine there announced was followed in *State, ex rel. Barton, v. Hopkins*, 12 Wash. 602 (41 Pac. 906), and again in *State, ex rel. Barton, v. Hopkins, ante*, p. 59.

In addition to the universal custom, which has prevailed almost from the organization of the territory up to the present time, to pay these warrants in the order of their issuance, the same session of the legislature which enacted the law relied upon by counsel for respondents (viz. Laws 1893, p. 167, § 2), two days before the law was passed providing for the assessment and collection of taxes in cities of the first class, passed the following comprehensive and unrestricted act (Laws 1893, p. 76), entitled

"An act in relation to county, school, city, and town warrants, and the manner of their payment :"

" SECTION 1. That all county, school, city and town warrants shall be paid according to their number, date and issue, and shall bear interest from and after their presentation to the proper treasurer :· provided, that no compound interest shall be paid directly or indirectly on any of said warrants.

" SEC. 2. No county auditor or clerk of the board of county commissioners shall issue any county warrant within less than ten days from and after the date of the allowance of such warrant."

That is all there is of this act. It is plain, positive and direct. It is an act in relation to the manner of the payment of warrants only, uncoupled with any other provisions. And § 2, p. 167, above referred to, must be construed with reference to this act, for it is not at all probable that the legislature intended to repeal the provisions of this direct act so soon after its

enactment ; at least, under the circumstances of its enactment, we would not be justified in concluding that it did, unless it was by a plain provision indicating an intention to repeal.

On the general proposition, however, of the right of the legislature to pass an act which would impair the obligation of a contract entered into under a prior act, under the provisions of the constitution of the United States, we are constrained to hold that a law providing for the diversion of a fund out of which a warrant was to be paid in the order of its issuance would be invalid so far as any warrants that were issued prior to the subsequent act were concerned. It is true that in California it has been held that a statute providing that claims against the county are entitled to payment according to priority of time in which they were presented must be construed as requiring the priority of payment only as between the warrants of any given year. This statute was construed in *Shaw v. Statler*, 74 Cal. 258 (15 Pac. 833), and in *San Francisco Gas Co. v. Brickwedel*, 62 Cal. 641 ; but the decisions were based squarely upon an article of the California constitution providing that no indebtedness or liability should be incurred (except in the manner stated) exceeding in any year the income and revenue actually received by such county, city, town, township, board of education, or school district ; and the supreme court rightly construed that limitation to mean that each year's income and revenue must pay each year's indebtedness and liability. It especially referred to the system previously prevailing in the municipalities of the state before the adoption of that restrictive provision of the constitution; and the earlier cases, before the enactment of

that constitutional provision, decided the questions there passed upon exactly the other way.

But, say the respondents in this case, "nobody is attempting to impair this obligation except appellant. His warrant will be paid by the city according to its number, date, and issue against the general fund. But that language does not exclude the special tax levy in question, nor the creation of new funds, if the general fund is left unimpaired." We see nothing to indicate that the tax provided for under the new ordinance is a special tax. It seems to us to be as general as any other tax that is levied for municipal purposes. The case of *Esser v. Spaulding*, 17 Nev. 289 (30 Pac. 896), seems to be in point on some propositions in favor of respondents' contention. There a provision of the statute which provides that, whenever there is a surplus in the salary fund, the board of county commissioners may transfer it to the general fund, and, whenever there is a deficiency, the board shall transfer to the salary fund a sufficient fund to meet all warrants drawn against the salary fund, was held to work no impairment of the obligation of contracts between a county and a person holding a certificate of indebtedness thereof payable out of the general fund, who was injuriously affected by the transfer to the salary fund. It is true that this case is really not in point, from the fact that it held that no contract was entered into between the county and receiver of the warrant, while the contrary is the settled law of this state. Neither does the case of *Charles River Bridge v. Warren Bridge*, 11 Pet. 427, upon which the Nevada court seems to base its judgment, involve the principles that are involved in this case. However, the court says:

" If we admit there was a contract, what was its extent? Only that certificates against the general fund

should be paid out of that fund in the order of presentation or allowance. The salary law does not impair the obligation of that contract, even though it exists, unless it is impaired by the passage of a general law, the effect of which is merely to postpone payment. The contract to pay out of the fund stated in the certificates has not been changed or impaired. It is still incumbent on the county to pay out of the general fund, and in the order of presentment or allowance."

We are not impressed with either the logic or fairness of this reasoning. It is not difficult to see that the court awarded to the plaintiff in that case the letter, while depriving him of the spirit, of the law. It was not only the right to have his warrant paid out of a certain fund that was guaranteed to the plaintiff in that case or in this, but that guaranty carried with it the idea that the fund itself should not be diverted from the purposes to which the law under which he contracted applied it. It might as well be said that if the city of Tacoma, being the possessor of two springs of water, had contracted with the plaintiff that he should have a right to the use of one spring for the purpose of watering his stock or for domestic purposes, and, after having entered into that contract and received its pay, had inserted a pipe into the current which fed the spring, thereby conveying the water which would have emptied into the spring into another channel, and when the purchaser remonstrated it could say to him: "Your right has not been interfered with. The spring is there, and you have the first right to the use of it." We hardly think that the admissibility of such a practice would be urged in a court of justice, and yet it seems to us that it is a parallel case. It is the *fund*, and not the shell which contains the fund, that the plaintiff is interested in;

25—14 WASH.

and, if the value of the thing which he purchased has been diminished by reason of the diversion of this fund, then it is an impairment of his contract. If, by reason of this diversion, the payment of the warrant will be delayed from one to ten or fifteen or twenty years, or any number of years, this fact certainly detracts from the value of the warrant purchased. If it had been known at the time of the issuance of the warrant that the date of its payment was uncertain, and that the funds as they came into the treasury were to be appropriated to the payment of subsequent claims, the warrant would not have had the market value that it did have at the time of its issuance. A person furnishing stationery or other goods or services to a county, by paying some little attention to the finances of the county, can determine with some degree of certainty when a warrant of a certain issue will be paid. That determination, especially in view of the fact that the interest is not paid until the warrant is paid, is a determination of the value of the warrant, and any postponement of that payment is *pro tanto* an impairment of his contract. It was decided by this court in the case of *Union Savings Bank & Trust Co. v. Gelbach,* 8 Wash. 497 (36 Pac. 467), that, under the laws of this state, a county warrant is a contract to pay money, and, if not paid on presentment to the county treasurer, the legal rate of interest in effect at such time enters into the contract as a part thereof, and cannot be affected by a subsequent law reducing the rate. It must be equally true that the time of payment cannot be affected by a subsequent law lengthening such time.

In *Cloud v. Town of Sumas,* 9 Wash. 399 (37 Pac. 305), it was held that the remedy of the holder of the warrant in case of the refusal of the treasurer of the corporation to pay the warrant in its order is to pro-

ceed against that officer by mandamus. To the same effect was *La France Fire-Engine Co. v. Davis*, 9 Wash. 600 (38 Pac. 154). A case which is very strongly relied upon by the respondents is *Clay County v. McAleer*, 115 U. S. 616 (6 Sup. Ct. 199), where a judgment creditor against the county commenced proceedings in mandamus, commanding the county officers to set apart a fund to pay the debt, or to levy and collect sufficient tax for the purpose; and it was held that, on the facts pleaded and admitted, no case was made justifying a writ of mandamus. But this opinion was based solely upon the ground of necessity, and on the admission of the pleadings that the whole amount of the tax for a current year was necessary for the ordinary current expenses of the county, and that the levy was as high as was authorized by the statute of Iowa, from which the case comes. By such statute, the county was authorized to levy and collect a tax of six mills on the dollar of the assessed value of the taxable property, for ordinary county revenue. This was the maximum levy. And it was upon this ground that the supreme court of the United States decided the case. But that question is not presented in this case.

On page 4 of the statement of facts by respondents, after setting forth the assessment, it is said:

" Then for the fiscal year 1895–96 the city of Tacoma has the power to levy 20 mills for all purposes. This would produce the sum of \$530,104. Having, however, levied but 11 mills, it has yet to its credit, unappropriated and unexpended, the sum of \$238,547. In other words, by a mandamus proceeding, the plaintiff can secure that large sum to be placed in the general fund for the payment of his and other similar warrants. There is nothing in this record to show that this will not be sufficient to pay all general fund warrants."

It is not the duty even if it be the privilege, of the holder of a warrant, to compel the city to place money in the treasury. That is the duty of the city. The law gives the creditor the right to have his warrant paid according to its number, date, and issue, out of moneys which are in the treasury. His right to an action commences then, and he has a right to invoke the law for the protection of his interest in such moneys, and to prevent them from being diverted from their proper channel, or from being applied to the payment of claims subsequent to his, and to his injury; and before the city can be heard, as an excuse for the repudiation in any degree of any just debt, to urge the plea of "necessity of existence," it must show that it has availed itself to the fullest possible extent of all its privileges under the law, and has put forth all the efforts necessary to perpetuate its existence under the conditions imposed by the law of paying its honest obligations in compliance with the provisions of law. When such a case is presented, it will be time to discuss the grave questions involved in the propositions of "corporate necessity, and the preservation of "corporate existence." But those questions are not involved here.

The judgment will be reversed, and the cause remanded, with instructions to enter judgment in accordance with the prayer of the plaintiff.

Hoyt, C. J., and Anders and Gordon, JJ., concur.