**STATE ex rel. FREELING, Atty. Gen., v. HOWARD, State Auditor (ALEXANDER, State Treasurer, Intervener).**

No. 9613—Opinion Filed Feb. 12, 1918.

(171 Pac. 41.)

~ (Syllabus.)

1. **Constitutional Law—Impairment of Obligation of Contracts—Bond.**
Chapter 89, Laws 1910-11, created the public building fund, to be composed of the proceeds of the sale and rentals of section 33, and lands granted to the state in lieu thereof for charitable and penal institutions and public buildings, and authorized the issuance and sale of $3,000,000 bonds, which should be payable out of said fund, and pledged the faith of the state to safely keep and preserve the proceeds of such sale and rentals, and apply same to the payment of the bonds authorized by that act, and to no other purpose or purposes. Bonds were issued and sold to the amount of $2,451,000, of which there have since matured and been paid bonds in the amount of $447,500. In 1917 the Legislature made certain appropriations for public buildings payable out of surplus moneys in the public building fund. Held, that so long as the appropriations did not exceed the amount that would be due on the amount of bonds authorized but not issued, with the interest that would accrue thereon, the conditions of the contract of the state with the holders of outstanding bonds would not be impaired.

2. **Statutes—Construction—Subsequent Legislation.**
Subsequent legislative enactment may be resorted to as an aid in the interpretation of prior legislation upon the same subject.

3. **States—Trust for Bondholders—Management.**
The state, as trustee for the bondholders, has the same powers as any other trustee would have under similar circumstances, and is under the obligation to exercise its powers for the conservation of the trust fund and the accomplishment of the trust purposes as a prudent man would exercise in the management of his own affairs.

Thacker, J., dissenting.

Mandamus by the State of Oklahoma, on relation of S. P. Freeling, Attorney General, against E. B. Howard, State Auditor, W. L. Alexander, State Treasurer, intervener. Case submitted by agreement pursuant to statute as an original proceeding after leave of court obtained, and judgment for relator.

S. P. Freeling, Atty. Gen., and Hunter L. Johnson, Asst. Atty. Gen., for plaintiff.

Chas. F. Barnett, for defendant and intervener.

HARDY, J. This is an agreed case submitted pursuant to the provisions of sections 5303 and 5305, Rev. Laws 1910, filed in this court as an original proceeding after leave of court first had and obtained.

The state, upon the relation of the Attorney General, prays a writ of mandamus directed to the state auditor, commanding him to open accounts against the public building fund of the state for the payment therefrom of appropriations made in 1917, and to issue a warrant against said fund in favor of W. T. Emerich, and also to compel said auditor to sign certain unsold public building bonds. W. L. Alexander, who, as state treasurer, holds a large part of the public building bonds of the state which have

been deposited with him by various persons, intervened, and with defendant questions the right of the state to the relief prayed, and the controversy is submitted to the court to determine whether warrants may be lawfully issued against said public building fund to meet the appropriations made in 1917, and whether the receipts from the proceeds of the sale and rentals of lands known as section 33, and other lands granted in lieu thereof in excess of that required to pay maturing installments of bonds and accrued interest may be used to pay said appropriations, and whether certain unsold public building bonds, which have been signed by a former auditor, approved by a former Attorney General and registered by a former state treasurer, should be signed, approved, and registered by the respective persons now occupying those positions. The public building fund was created by chapter 89, Laws 1910-11, § 1 of which declares that all moneys received from the sale or rentals of section 33, and lands granted, in lieu thereof, should constitute and be known as the public building fund. Section 2 authorized the issuance and sale of $3,000,000 in bonds, payable out of the proceeds of said lands, and section 9 of said act is as follows:

"All bonds and interest thereon, when issued as provided for in this act, shall become payable out of the public building fund arising from the sale or rental of section 33, and lands granted to the state in lieu thereof, until all of said bonds and interest thereon are fully paid. And the good faith of the state is solemnly pledged to administer the trust created by the terms of the Enabling Act and the Constitution of Oklahoma, to apportion and dispose of all lands granted to the state for charitable and penal institutions and public buildings, as the Legislature may prescribe, and safely keep and preserve the proceeds of the rental and sale thereof, and apply same to the payment of the bonds authorized by this act, and the interest thereon, as the same falls due, and to use such funds, constituting the public building fund, for no other purpose or purposes. All bonds shall be paid in the order in which they are issued. The state treasurer, commissioner of school land department and county treasurers are authorized to receive public building bonds as collateral security for the deposit of public funds in the various banks of the state."

Pursuant to this chapter bonds were issued and sold in the amount of $2,541,000, of which amount there has since matured and been paid bonds in the sum of $447,500, leaving outstanding bonds in the sum of $2,004,000 with coupons thereto attached for interest yet to accrue at the rate of 5 per cent. per annum.

It is conceded that the provisions of said chapter 89 constitute a contract between the state and the holders of the bonds now outstanding, and that the terms of said contract cannot be impaired by any subsequent legislation. The general rule is that, where a special fund has been pledged for use in the payment of bonds or other obligations, such fund may not be diverted to any purpose other than that to which it is pledged. Diggs v. Lobsitz, 4 Okla. 232, 43 Pac. 1069; Wabash & Erie Canal Co. v. Beers, 67 U. S. (2 Black) 448, 17 L. Ed. 327; Louisiana v. Jumel, 107 U. S. 711, 2 Sup. Ct. 128, 27 L. Ed. 448; Graham v. Horton, 6 Kan. 343; People v. Pachico, 29 Cal. 210; McCauley v. Brooks, 16 Cal. 11; Edemiller v. City of Tacoma, 14 Wash. 376, 44 Pac. 877; State v. Cardozo, 8 S. C. 71, 28 Am. Rep. 275; Park v. Candler, 113 Ga. 647, 39 S. E. 89; Western Savings Fund Society v. Philadelphia, 31 Pa. 175; Fazende et al. v. City of Houston (C. C.) 34 Fed. 95.

The Attorney General contends that the trust provisions of chapter 89 do not prevent the use of moneys received to the credit of the public building fund in excess of the amount required to pay installments of bonds and interest as they mature for the purpose of paying appropriations made, and, further, that the pledge made by section 9 of said chapter extends, not alone to the bonds actually sold, but to the full amount of bonds authorized, and that moneys accruing to said fund in excess of the amount necessary to pay current maturing bonds and interest may lawfully be used to meet appropriations made without impairing any contract obligation contained within chapter 89, so long as the amount used does not exceed the amount of unsold bonds and interest that would accrue thereon.

Previous to the sale of the bonds provision had been made for the sale of said lands on 40 years' time, the purchase price to be paid in installments and to bear interest. Rev. Laws 1910, art.1, c. 69. And according to this plan there was provided an annual income sufficient to pay installments of bonds maturing and interest and leave an annual surplus of from $90,000 to $100,000. It certainly was not the intention of the Legislature that the total receipts to the credit of said fund should be paid to the bondholders, for all that they could demand would be the principal amount of the bonds held by them, together with the interest that would accrue thereon according to the terms of said bonds. Neither the state nor the purchasers of said bonds understood otherwise. Was it then intended that all of said fund,

other than what was necessary to take care of accruing claims of bondholders, should remain intact until the last of said bonds had been retired? By section 2 of chapter 89 certain warrants theretofore issued were made a legal and valid lien against the public building fund, and by chapter 34, Laws 1913, p. 67, all moneys in the building fund, in excess of the amount required for the payment of outstanding bonds and interest accruing, was transferred to the "union graded or consolidated school fund." By chapter 222, Laws 1917, these moneys were retransferred to the public building fund "in excess of the amount for which bonds have been issued," and all appropriations for the construction of public buildings have been made from the public building fund. Thus we have legislative evidence of legislative intent. True the obligations of chapter 89 cannot be changed by subsequent legislation, but it is permissible for us to refer to such subsequent legislation in order to determine the legislative intent in the enactment thereof. Tiger v. Western Inv. Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738; Board Com'rs v. Alexander, 58 Okla. 128, 159 Pac. 311.

Not all of the bonds which were authorized have been sold, and the question arises, Must the moneys in the public building fund not needed to pay maturing bonds and interest lie idle to the credit of said fund until all of said bonds have matured and been paid and the state in the meantime be required to borrow moneys for the credit of said fund, and thereby incur larger indebtedness to be paid from said fund? No doubt is expressed of the power of the state to sell the remainder of the bonds authorized, and it is admitted that, should this be done, a liability against the public building fund would be incurred in excess of $1,000,000, while if the moneys available and not needed for present demands may be used, a saving of more than $600,000 will be made thereby. the security of the bondholders be conserved and rendered proportionately more valuable. The obligation of the state in the preformance of the trust is to conserve the trust fund, and the plan proposed is conceded to be in keeping with sound business principles and for the best interest of all parties concerned, but it is said to be in violation of the strict letter of the contract. The bondholders may be heard to complain when the obligation of their contract with the state has been impaired. Graham v. Horton, 6 Kan. 209; Fazende et al. v. City of Houston (C. C.) 34 Fed. 95; Trustees, etc., v. Bailey, 10 Fla. 112, 81 Am. Dec. 194; Wabash & Erie Canal Co. v. Beers, 67 U. S. (2 Black)

448, 17 L. Ed. 327; State v. Cardozo, 8 S. C. 71, 28 Am. Rep. 275; Park v. Candler, 113 Ga. 647, 39 S. E. 89.

But the payment of said appropriations according to the arrangement proposed will not have that effect. On the contrary the opposite result will be obtained. Neither does it violate the letter of the contract so long as the sum used does not exceed the amount that would be payable on both principal and interest of the remaining bonds authorized in the event of their sale.

The case of Trustees of the Internal Improvement Fund v. Bailey, 10 Fla. 112, 81 Am. Dec. 194, is cited as being opposed to the conclusion reached herein. The facts were that certain lands had been granted by the United States to the state of Florida for the purpose of providing a system of internal improvements. Bonds had been issued against the fund derived from those lands. Thereafter the state undertook to divert a portion of the fund to work upon a water course. In the litigation which followed the court held the purpose to which it was desired to devote the fund was not within the purposes of the trust fund. In the case at bar the state desires to apply the excess moneys on hand to the very purposes which would be accomplished by the sale of the remainder of the bonds authorized. In the later case of Trustees of Internal Improvement Fund v. Gleason. 15 Fla. 384, the court sustained the right of the trustees to apply a part of the trust fund to the improvement of the trust property. As trustee the state had the same powers as any other trustee under similar circumstances, and was under the obligation to exercise such powers for the conservation of the trust fund and the accomplishment of the trust purposes as a prudent man would exercise in his own affairs. Wyman v. Herard, 9 Okla. 35, 59 Pac. 1009; Morrow v. County of Saline, 21 Kan. 484; 39 Cyc. 295.

It is the substance of the funds in which the bondholders are interested and to which they look for security, and it is the value of that fund, and not the mere name attached thereto upon which they may rely. Eidemiller v. City of Tacoma, 14 Wash. 376, 44 Pac. 880. And if by reason of prudent foresight and good business judgment the fund has been enhanced and the value of their security increased without any part thereof being devoted to other purposes, they cannot complain that the obligations of their contract have been impaired or the value of their security injuriously affected.

The claim of Emerich is admitted to be correct, and was duly approved, and defendant refuses to issue a warrant for the payment thereof, for the sole reason that he is not advised as to whether such act upon his part would be legal, and for the same sole reason refuses to open accounts against the public building fund in accordance with the appropriations made in 1917, and the prayer of the state is granted and the auditor is directed to issue a warrant for the payment of said claim and to open accounts against the Public Building Fund in accordance with the prayer of plaintiff's petition.

Whether the pledge of the public building fund contained in chapter 89 simply binds the state to an administration of the fund, and the payment of obligations against said fund as they mature, leaving all other amounts in excess of that required for this purpose subject to appropriation prior to the payment of all outstanding bonds, is a question that we need not, in the present proceeding, determine. Entertaining the view that the obligation of the contract with the bondholders will not be impaired by the plan proposed so long as the excess moneys used do not exceed the amount which would be payable upon the balance of the bonds authorized, together with interest that would accrue thereon, we leave the remaining question undetermined.

Both parties join in the request that if we should reach this conclusion the bonds previously executed which remain unsold should be delivered into court for cancellation, and it is ordered that said bonds be delivered to the clerk of this court, and by him canceled as prayed.

All the Justices concur, except SHARP, C. J. and TURNER, J., who concur in conclusion. THACKER, J., dissents.