## WEISS v. COMMISSIONERS OF THE LAND OFFICE.

No.. 28088.    Feb. 1, 1938.

J. Berry King and George J. Fagin, for plaintiff.

Orlando F. Sweet, for defendants.

GIBSON, J. This original action is brought to compel the Commissioners of the Land Office of the state to segregate and retain sufficient moneys now on hand · or to be received from any source in the public building fund as well as assets now owned or to be acquired by the public building fund, so that such segregated funds may secure the payment of the outstanding University Dormitory public building bonds, Agricultural and Mechanical College Dormitory building bonds, and University Infirmary public building bonds, and interest thereon. Plaintiff seeks an injunction on the theory that the commissioners, unless restrained, will pay certain unnamed appropriations made by the Sixteenth Legislature against the public building fund, asserting that until there is sufficient moneys in the public building fund "earmarked to secure the payment of the dormitory and infirmary public building bonds and interest due thereon to the maturity of the bonds," no appropriations should be paid.

The commissioners, expressing their desire to see every pledge and every promise made by the state in the issuance of these bonds carefully and fully observed, join in the request for a construction of the statutes. but take the position that the laws under which the bonds were issued do not make the bonds a lien against all the public building fund and do not require the impounding of a sum in said fund sufficient to equal the amount of all outstanding bonds and the interest thereon to maturity.

The dormitory bonds were issued under the provisions of chapter 87, S. L. 1923-24 (O. S. 1931, secs. 7135-40), and the infirmary bonds under authority of chapter 104, S. L. 1927 (O. S. 1931, secs. 7236-40). Each act provides a special sinking fund to be derived from rentals, charges. and fees— in the case of the dormitories, only from those using the dormitories; and in the case of the infirmary, from all the students attending the State University. The acts provide for payment of the bonds issued, respectively, as follows:

"All funds accruing to the said 'University Dormitory Sinking Fund,' or the said 'Agricultural and Mechanical College Dormitory Sinking Fund,' as herein provided, **together with all credits accruing from the State Public Building Lands, or Funds, not otherwise pledged, or so much thereof as may be required, are hereby irrevocably pledged to the payment of the interest and principal of said bonds."** O. S. 1931, sec. 7139. (Emphasis ours.)

The statute authorizing the issuance of the infirmary bonds contains identical provisions, except, of course, the special sinking fund is differently designated. O. S. 1931, sec. 7240. In each case, also, the duty is enjoined upon the proper governing boards to charge rentals or fees for the use of such dormitories or infirmary sufficient to pay the interest and principal of said bonds.

The bonds were issued in series and in each case recite the foregoing applicable provisions of the statutes, and refer to the Enabling Act, section 4, article 11, of the Constitution, articles 1 to 7, inclusive, and article 9, of chapter 81, C. O. S. 1921, relating to the public lands and building fund. (See chapter 28, O. S. 1931, same numbered articles.) These sections authorize the leasing, rental, and sale of the public lands and the creation of the public building fund.

By chapter 89, S. L. 1910-11 (art. 11, ch. 27, O. S. 1931), the first public building fund bonds were issued. Under this act (sec. 5483, O. S. 1931) the bonds so issued were expressly made payable out of the public building fund arising from the sale or rental of section 33 and lands granted in lieu thereof, and the good faith of the state was solemnly pledged to keep the proceeds safely and to use the public building fund for no other purpose, until the bonds with interest were fully paid. This act came before this court in the case of State ex rel. Freeling v. Howard, 67 Okla. 296, 171 P. 41. Each side here points to that case as an authority.

Some of the propositions of law admitted or decided in the cited cases are not at issue here. It is admitted that the commissioners are trustees of the funds involved either for the state or bondholders or both. It is also undisputed that the statutes and constitutional provisions under which the bonds were issued constitute a contract with the bondholders, and that, if the appropriations of the Sixteenth Legislature call for expenditure of any of the pledged funds so

as to lessen the security of the bondholders, such appropriations are ineffective. Some other questions here presented, however, are by that opinion expressly pretermitted, since it appeared in that case, as the court said, that there were sufficient excess funds at hand to pay the appropriations made by the Legislature after making allowance for the payment of the interest accruing and the principal of the bonds. It appears from the facts recited in that case, moreover, that this excess was determined by considering the sum of the annual receipts to the fund during the lifetime of the bonds as well as the funds on hand and available during the appropriation period.

The bonds under consideration in the case just discussed have been paid. The bonds here under consideration are in priority according to the dates of the acts under which they were issued, the dormitory bonds constituting a first lien and the infirmary bonds a second lien upon the "credits accruing" to the public lands and funds not otherwise pledged. The bonds considered in the case just referred to were expressly made payable out of the public building fund whether it arose from the sale or rental of lands which were to form the basis for the creation of the fund.

It is apparent here, however, that the Legislature has not pledged the lands and fund; it has pledged only the "credits accruing" from said lands and funds. We read the act as if the Legislature, after enjoining upon the board (in charge of the university or college, as the case may be) the duty of establishing such rentals, charges, and fees to be paid by the students attending as would be necessary to provide a sufficient sinking fund for the payment of the interest and principal of the bonds authorized, had then said:

"Such sums so collected shall be deposited in the State Treasury, to the credit of a fund to be maintained and designated in the treasury as 'The University Dormitory sinking fund,' or 'The Agricultural and Mechanical College Dormitory sinking fund' (or 'The University Infirmary building sinking fund') as the same may be. All funds accruing to the said 'University Dormitory sinking fund,' or (to) the said 'Agricultural and Mechanical College Dormitory sinking fund' (or to 'University Infirmary building sinking fund') as herein provided, together with all credits accruing from the state public building lands, or (from the state public building) funds not otherwise pledged, or so much (of such credits) as may be required (as necessary to make up any deficiency in revenues arising from the use of the dormitories or infirmary as the case may be) are hereby irrevocably pledged to the payment of the interest and principal of said bonds."

It is clear that if the Legislature meant to pledge the fund itself, it would have said so in unmistakable language and not used the term "credits accruing." Obviously the words "credits accruing" are applied both to the lands and fund and consequently have reference to the rents, royalties, profits, and interest accumulating from the lands and funds and such other income as may augment the fund already existing. The word "accruing" ordinarily has reference to the increase or augmenting of a fund or property. The word "accrue" is defined by Webster as: "to increase; to augment; to be added as increase, profit or damage especially as the produce of money lent. 'Interest accrues to principal.'" It is equally obvious that by "credits accruing" the Legislature did not mean credits already accrued or in the fund, but looked prospectively. The conclusion, therefore, is that as to the dormitory and infirmary bonds only the accruing credits, consisting of rentals, profits, or royalties from lands, and interest from the investments of the building fund accruing after the dates the respective acts became effective were pledged, and such other funds as may be considered as accruing credits.

But not necessarily were all of said credits pledged. The acts provide that only so much as may be required are pledged. Since the acts contemplate that the bonds may be, and they have been, issued in series payable over a series of years, and since the income for the special sinking funds accrues annually, it is apparent that the determination of what amount constitutes "so much as may be required" when considered as such amount as is necessary to make up a deficiency in revenues to the special sinking fund, can be arrived at only by viewing the requirements either on an annual basis, or at most only in respect to the interest next payable and the series of bonds next payable. To consider the requirements otherwise would be to say that all the credits accruing must be held until they equal the amount of outstanding bonds and accruing interest, whereas the act says only so much as may be required are pledged. If the special fund proves adequate, none of these credits may be required.

In the supplemental response filed herein it is alleged that the annual cash collections from such public building lands and funds, throughout the lifetime of the bond issues herein involved, will far exceed the

annual accruals on such bond issues. These allegations have not been denied, and we therefore consider them as establishing the facts asserted. In the case of State ex rel. Freeling v. Howard, supra, it appears that the court considered such anticipated annual receipts as a part of the assets, and that there was no necessity to hold the total receipts accruing. The court there said:

"According to this plan there was provided an annual income sufficient to pay installments of bonds maturing and interest and leave an annual surplus of from $90,000 to $100,000. It certainly was not the intention of the Legislature that the total receipts to the credit of said fund should be paid to the bondholders, for all that they could demand would be the principal amount of the bonds held by them, together with the interest that would accrue thereon according to the terms of said bonds. Neither the state nor the purchasers of said bonds understood otherwise. * * *

"Must the moneys in the public building fund not needed to pay maturing bonds and interest lie idle to the credit of said fund until all of said bonds have matured and been paid and the state in the meantime be required to borrow moneys for the credit of said fund, and thereby incur larger indebtedness to be paid from said fund? No doubt is expressed of the power of the state to sell the remainder of the bonds authorized, and it is admitted that, should this be done, a liability against the public building fund would be incurred in excess of $1,000,000, while if the moneys available and not needed for present demands may be used, a saving of more than $600,000 will be made thereby, the security of the bondholders be conserved and rendered proportionately more valuable. * * *

"It is the substance of the fund in which the bondholders are interested and to which they look for security, and it is the value of that fund, and not the mere name attached thereto upon which they may rely."

It is clear, therefore, that the court considered that the value of the fund, determined in part by the prospective accruals or income thereto, was the thing to be considered, and that where this prospective value was sufficient to take care of future needs, the moneys not needed to take care of present or current needs were available for appropriation or investment. On the same basis, in view of the facts assumed from the allegation of the response, there will be sufficient cash assets at all times to meet the accruing obligations, and the present cash surplus need not be held in the fund, as it will not be "required," nor need

any surplus accruing in succeeding years be so held.

In the case of Freeling v. Howard, supra, the authorities urged here were considered. This court there held that in administering the trust the state has the same powers as any other trustee would have under similar circumstances and is under the obligation to exercise such powers for the conservation of the trust fund and the accomplishment of the trust purposes as a prudent man would exercise in his own affairs. In the exercise of this trust, in accordance with the provisions of the law, we believe that the state is here bound, acting through the defendant commissioners, so to administer the lands and funds as to see that there are sufficient moneys in the special sinking fund, augmented, if necessary, by the credits accruing as hereinafter defined, to make payments of the obligations of interest and principal payments as they mature, leaving all other amounts of such credits in excess thereof subject to legislative appropriation.

Defendants say:

"We would not object to a holding of this court to the effect that the defendants should be required to keep on hands at all times sufficient cash in the public building fund to pay the next annual accruals on the bonds, leaving, however, any surplus in excess of that sum free to be disbursed for the payment of such purposes as may be prescribed by the Legislature, nor would we object to a holding by this court that if, at any time in the future, the total book assets of such fund should be so reduced as not to exceed the balance of the outstanding bonds, then and in such event, the defendants should be restrained from paying out or disbursing any cash collections whatsoever from such public building lands, or fund, except in payment of the bonds involved. We believe that such a holding would honor to the fullest extent the pledge made by the state and would in all things protect the good name, faith, and credit of the state of Oklahoma."

Since this suggestion does not seem out of harmony with the prudent administration of the fund, and apparently is as much as the bondholders properly may demand, the suggestion will be substantially accepted and relief will be granted to the extent of requiring the defendants at all times to keep on hand sufficient cash in the public building fund to pay the next annual accruals, interest and principal, on the bonds, and to restrain the defendants from at any time reducing the assets, at the values now shown on their books, below such amount as will equal the balance of the outstanding bonds.

This, of course, contemplates that so far as possible the special sinking funds accruing from dormitory or infirmary charges, rentals, and fees must still be used to liquidate the obligations of the bonds.

Writ granted.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, HURST, and DAVISON, JJ., concur.